TITANUS CEMENT WALL COMPANY, INC v WATSON

ERB LUMBER COMPANY v WATSON

Docket Nos. 90869, 90870. Submitted October 16, 1986, at Lansing. Decided January 28, 1987.

Pursuant to a written contract, Titanus Cement Wall Company, Inc., and Erb Lumber Company each supplied materials or labor to John Watson, doing business as Lumberjack Builders, for the construction of a number of single family residences. Watson owned the land on which the homes were being constructed. Shortly after completing their contractual obligations, Titanus and Erb filed lien claims against the properties on which they had provided the services. When Watson did not pay Titanus or Erb, each filed suit against Watson in Oakland Circuit Court to, among other things, foreclose their respective liens. The Homeowners Construction Lien Recovery Fund was also named as a defendant in the cases. By the time the instant complaints were filed, Glen and Marlene Stoddard had purchased one of the homes upon which a lien claim was being made and David and Dorothea Heintz had purchased another. Both had made full payment to Watson. The Stoddards were named as defendants in the suit filed by Titanus. The Heintzes were named as defendants in the suit filed by Erb, as was First Federal Savings Bank & Trust. At approximately the same time as Titanus and Erb filed their complaints, an involuntary bankruptcy petition was filed against Watson. The petition was eventually converted to a voluntary Chapter 7 petition. Apparently, the bankruptcy court modified the automatic stay provided by 11 USC 362 to allow Titanus and Erb to prosecute their foreclosure actions against the Stoddards' property and the Heintzes' property and to prosecute their claims against the fund. The court, Robert C. Anderson, J., consolidated the actions, granted summary disposition in favor of the fund and dismissed it as a defendant in the actions, holding that the

REFERENCES

Am Jur 2d, Mechanics' Liens §§ 49 et seq.

Am Jur 2d, Statutes §§ 223 et seq.

See the annotations in the Index to Annotations under Mechanics' Liens; Statutes.

instant factual situations were not ones which the Legislature intended to be covered by the fund. The Stoddards, the Heintzes, and First Federal appealed the dismissal of the fund from the two cases. The appeals have been consolidated.

The Court of Appeals *held:*

1. The Construction Lien Act provides that disbursements from the fund may be made only to subcontractors, suppliers, or laborers. Titanus and Erb are contractors as that term is defined in the act, and there is no provision in the act which would permit disbursements to contractors. It is equally clear that Titanus and Erb are not subcontractors, suppliers or laborers under the terms of the act. Thus, Titanus and Erb are not proper parties to recover from the fund and are not entitled to recover on their liens from the fund.

2. The Legislature did not intend for the fund to apply to situations where a developer or builder constructs homes for sale on land which he owns. Disbursements from the fund are to be made only to satisfy liens on residential structures, as defined in the act. Under the terms of the act, the owner or lessee contracting for an improvement must be residing or intend to reside in the residential structure upon completion of the improvement before the fund applies to the improvement. Watson did not intend to reside in any of the houses upon completion, therefore the houses do not qualify as residential structures under the act.

3. Appellants are not entitled to file an affidavit under the act precluding Titanus and Erb from attempting to enforce their claims of liens. Only the owners of residential structures as defined by the act have the privilege of filing such affidavits.

4. Appellants' argument that, because they are third-party beneficiaries of the contracts between Titanus and Watson and Erb and Watson, Watson should be considered the contractor and Titanus and Erb should be considered subcontractors is rejected. Such a conclusion cannot be reached without rejecting the explicit definitions in the act.

5. Appellants' assertion that the fund was intended to cover every situation where a contractor's lien creates a possibility that a homeowner may have to pay twice is also rejected. The fund was not intended to cure all such problems in the construction industry.

Affirmed and remanded for further proceedings.

1. MECHANICS' LIENS — CONSTRUCTION LIEN ACT — HOMEOWNERS
   CONSTRUCTION LIEN RECOVERY FUND.
   Disbursements from the Homeowners Construction Lien Recovery

Fund may be made only to subcontractors, suppliers, or laborers, as those terms are defined in the Construction Lien Act (MCL 570.1101 *et seq.;* MSA 26.316[101] *et seq.*).

2. MECHANICS' LIENS — CONSTRUCTION LIEN ACT — HOMEOWNERS CONSTRUCTION LIEN RECOVERY FUND.

The Homeowners Construction Lien Recovery Fund does not apply to situations where a developer or builder constructs homes for sale on land which he owns; disbursements from the fund are to be made only to satisfy liens on residential structures, as defined in the act, i.e., structures in which the owners or lessees contracting for the improvement are residing or will reside upon completion of the improvements (MCL 570.1106[3], 570.1203[1]; MSA 26.316[106][3], 26.316[203][1]).

3. STATUTES — DEFINITIONS.

A statutory definition supersedes a commonly accepted or dictionary definition and is binding on the courts.

*Snyder & Handler, P.C.* (by *Wallace M. Handler*), and *Booth, Patterson, Lee, Karlstrom & Steckling* (by *Carl G. Karlstrom*), for defendants.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Walter V. Kron, Larry G. Watterworth,* and *Kevin Thom,* Assistant Attorneys General, for Homeowners Construction Lien Recovery Fund.

Before: DANHOF, C.J., and BRONSON and T. GILLESPIE,* JJ.

PER CURIAM. The predominant issue raised in this appeal is one of first impression and concerns whether contractors who supply materials and labor to a builder/developer for the construction of a single-family residence may recover the contract price of the materials and labor from the Homeowners Construction Lien Recovery Fund, §§ 201 to 207 of the Construction Lien Act, MCL 570.1101 *et seq.;* MSA 26.316(101) *et seq.,* in the event they

* Circuit judge, sitting on the Court of Appeals by assignment.

are unable to collect the contract price from the builder/developer.

Pursuant to a written contract, Titanus Cement Wall Company and Erb Lumber Company each supplied materials or labor to John Watson, doing business as Lumberjack Builders, for the construction of a number of single family residences. Watson owned the land on which the homes were being constructed. Shortly after completing their contractual obligations, Titanus and Erb filed lien claims against the properties on which they had provided the services. When Watson did not pay Titanus or Erb, each filed suit to, among other things, foreclose their respective liens. The Homeowners Construction Lien Recovery Fund was named as a defendant in one of the suits and was later added as a defendant in the other. By the time the instant complaints were filed, Glen and Marlene Stoddard had purchased one of the homes upon which a lien claim was being made and David and Dorothea Heintz had purchased another. Both had made full payment to Watson. The Stoddards were named as defendants in the suit filed by Titanus. The Heintzes were named as defendants in the suit filed by Erb, as was First Federal Savings Bank & Trust, which we presume is the Heintzes' mortgagee. Watson was named as a defendant in both suits.

At approximately the same time as Titanus and Erb filed their complaints, an involuntary bankruptcy petition was filed against Watson. The petition was eventually converted to a voluntary Chapter 7 petition. Apparently, the bankruptcy court modified the automatic stay provided by 11 USC 362 to allow Titanus and Erb to prosecute their foreclosure actions against the Stoddards' property and the Heintzes' property and to prosecute their claims against the fund.

On July 30, 1985, the Oakland Circuit Court entered an order consolidating the Titanus suit, the Erb suit, and nineteen similar actions, all of which were against Watson or related parties.[1]

On August 14, 1985, the circuit court entered an order of summary disposition, MCR 2.116(C)(8), in favor of the fund and dismissed the fund as a defendant in the Titanus suit. The court held that the instant factual situation was not one which the Legislature intended to be covered by the fund.

On August 21, 1985, the circuit court granted a similar motion for summary disposition and on the same grounds dismissed the fund from the Erb lawsuit.

On November 6, 1985, the court entertained a motion by the Stoddards to reconsider the court's August 14, 1985, ruling that Titanus was not entitled to recover from the fund. The court denied the motion. At the same hearing, it was decided that a single order applicable to all twenty-one cases should be entered dismissing the fund from all of the actions. Such an order was entered on December 12, 1985. From this order, the Stoddards, the Heintzes, and First Federal Savings Bank & Trust appeal.[2] Titanus and Erb have not appealed.

---

[1] Erb was also the plaintiff in the nineteen other actions which were consolidated.

[2] The claim of appeal which was filed in this Court lists all twenty-one lower court case numbers. However, only the lower court files of the cases involving the Stoddards and the Heintzes have been filed. Also, the statement of facts in the briefs of the parties refer only to the circumstances surrounding the properties owned by the Stoddards and the Heintzes. Thus, it is unclear whether the Stoddards, the Heintzes, and First Federal Savings Bank & Trust are the only appellants or if it was intended that one or more defendants in each of the nineteen other cases also be appellants. Hereafter, for ease of reference "appellants" will refer only to the Stoddards, the Heintzes, and First Federal Savings Bank & Trust.

We also note that appellants did not file or formally plead a claim against the fund, the appellee. Both the appellants and the fund were defendants below. However, since the fund has not questioned the

Appellants first argued that Titanus and Erb are proper parties to recover from the fund. Appellants argue that the fund was established to protect homeowners from the precise situation that occurred here and insure that homeowners not be placed in a situation where they might be required to pay twice for improvements.

Under § 203(1) of the act, the owner of a "residential structure" may prevent a claim of a construction lien from attaching to his or her property by filing with the circuit court an affidavit, stating that he or she has done all of the following:

(a) Paid the contractor for the improvement to the residential structure and the amount of the payment.

(b) Not colluded with any person to obtain a payment from the fund.

(c) Cooperated and will continue to cooperate with the department in the defense of the fund.

Under § 203(3) of the act, the person who has recorded a claim of lien but who is precluded from recovery on the lien because of a subsection 1 affidavit may recover from the fund the amount for which the lien is established if he or she demonstrates that certain requirements have been fulfilled. MCL 570.1203(3); MSA 26.316(203)(3).

The crucial issue here is whether either Titanus or Erb is entitled to receive payment from the fund. MCL 570.1203(6); MSA 26.316(203)(6) provides an explicit answer to this question: "Payment from the fund shall be made *only if* the court finds that *a subcontractor, supplier, or la-*

appellants' right to bring the instant appeal, we will not address the issue.

*borer* is entitled to payment from the fund." (Emphasis added.) Thus, disbursements from the fund may be made only to subcontractors, suppliers, or laborers. There is no provision in the act which would permit disbursements to contractors. We conclude that Titanus and Erb are contractors as that term is defined in the act.

MCL 570.1103(5); MSA 26.316(103)(5) provides:

> "Contractor" means a person who, pursuant to a contract with the owner or lessee of real property, provides an improvement to real property.

When the contracts between Titanus and Watson and between Erb and Watson were entered into, Watson was the owner of the land. Improvements were provided pursuant to these contracts. Therefore, for the purposes of the act, Titanus and Erb are "contractors."

It is equally clear that Titanus and Erb are not subcontractors, suppliers or laborers. A person is not a subcontractor if he contracts with the owner or lessee of the property on which the improvement is to be constructed. MCL 570.1106(4); MSA 26.316(106)(4). A "supplier" provides materials or equipment pursuant to a contract with a contractor or subcontractor. MCL 570.1106(5); MSA 26.316(106)(5). A laborer provides labor pursuant to a contract with a contractor or subcontractor. MCL 570.1104(8); MSA 26.316(104)(8). Because Titanus and Erb are contractors, and not subcontractors, suppliers or laborers, they are not entitled to recover on their liens from the fund.

Our conclusion that the Legislature did not intend for the fund to apply to situations where a developer/builder constructs homes for sale on land which he owns is fortified by the fact that disbursements from the fund are to be made only

to satisfy liens on "residential structures." MCL 570.1203(1); MSA 26.316(203)(1). "Residential structure" is defined in MCL 570.1106(3); MSA 26.316(106)(3) as

> an individual residential condominium unit or a residential building containing not more than 2 residential units, the land on which it is or will be located, and all appurtenances thereto, in which the owner or lessee contracting for the improvement is residing or will reside upon completion of the improvement.

Since Watson was the owner who contracted for the improvements and since he did not intend to reside in any of the houses upon completion, the homes were not "residential structures" as that term is used and must be applied under the act. It is without import that single family residences would commonly be considered to be "residential structures." A statutory definition supersedes a commonly accepted or dictionary definition. *LeGalley v Bronson Community Schools,* 127 Mich App 482, 485-486; 339 NW2d 223 (1983). Where a statute contains a definition, that definition is binding on the court. *General Motors Corp v Bureau of Safety & Regulation,* 133 Mich App 284, 292; 349 NW2d 157 (1984).

Because the homes in question are not "residential structures," appellants are not entitled to file a § 203(1) affidavit precluding Titanus and Erb from attempting to enforce their claims of liens. Only the owners of "residential structures" have the privilege of filing such affidavits. MCL 570.1203(1); MSA 26.316(203)(1).

It is also because of the explicit definitions contained in the statute that we reject appellants' corollary arguments that because they are third-party beneficiaries, pursuant to MCL 600.1405;

MSA 27A.1405, of the contracts between Titanus and Watson and between Erb and Watson, they should be considered owners for purposes of the act, Watson should be considered the contractor and Titanus and Erb should be considered subcontractors. Such a conclusion may not be reached without rejecting the explicit definitions of the act, which this Court is not permitted to do.

We also reject appellants' assertion that the fund was intended to cover every situation where a contractor's lien creates a possibility that a homeowner may have to pay twice. It does not appear that the fund was intended to cure all such problems in the construction industry. The economic restraints under which the fund operates are evidence of that fact.[3] Also, the Legislature may elect to remedy a problem one facet at a time.

We also note that an individual who purchases a home from a developer has means available to protect himself or herself from the liens of subcontractors. Such an individual is afforded notice of the possible claims of subcontractor liens by the notice of commencement which the developer (assuming the developer is "the owner or lessee contracting for the improvements," as was the circumstance here) is required to record in the office of the Register of Deeds. MCL 570.1108(1) and (2); MSA 26.316(108)(1) and (2). Having notice, it would appear that the prospective purchaser has the

[3] The Legislature has mandated that the fund be self supporting. MCL 570.1201(1); MSA 26.316(201)(1). It was first funded in 1982 when persons applying for the renewal of various contractors' licenses were assessed a $50 fee. The fund continues to be funded by assessments collected from persons initially applying for various contractor licenses. MCL 570.1201; MSA 26.316(201). If, on December 1 of any year, the balance in the fund is less than one million dollars, the director of licensing and regulation may require an additional assessment up to $50 from each current member of the fund. MCL 570.1201(2); MSA 26.316(201)(2). No more than $75,000 may be paid out of the fund per residential structure. MCL 570.1204; MSA 26.316(204).

opportunity to identify possible lien claimants and the amount of such claims and also has the ability to arrange payments to the builder/developer in such a manner as to insure that such claims are paid.

The decision of the circuit court is affirmed. The case is remanded for further proceedings consistent with this opinion.

BRONSON, J. did not participate.