KARAUS v BANK OF NEW YORK MELLON

Docket No. 307842. Submitted December 12, 2012, at Grand Rapids. Decided December 20, 2012. Approved for publication March 19, 2013, at 9:05 a.m. Leave to appeal denied, 494 Mich ___.

Edward Karaus, doing business as Great Lakes Sea Walls, filed an action in the Allegan Circuit Court against the Bank of New York Mellon, PNC Bank, Sheldon Caref and Nelly Caref, seeking damages for breach of contract by the Carefs, asserting that all defendants were unjustly enriched by the improvements he made to the Carefs' property, and seeking to foreclose on a construction lien for work performed by plaintiff on that residential property. The court, Kevin W. Cronin, J., granted Mellon summary disposition on the construction lien claim, finding that the construction lien was not valid because the work had been performed on a residential property without a written contract as required by MCL 570.1114 of the Construction Lien Act (CLA), MCL 570.1101 *et seq*. The court concluded that there was no material issue of fact regarding whether the property was residential for purposes of the CLA. The court also granted summary disposition to Mellon on the unjust enrichment claim, concluding that plaintiff had another adequate legal remedy and that there was no evidence that Mellon had been enriched by the work performed by plaintiff on the house. Plaintiff appealed.

The Court of Appeals *held*:

1. MCL 570.1114 provides that a construction lien for work performed on a residential structure is valid only if the contractor's work is completed pursuant to a written contract. The CLA defines "residential structure" as an individual residential condominium unit or a residential building containing not more than 2 residential units, the land on which it is or will be located, in which the owner or lessee contracting for the improvement is residing or will reside upon completion of the improvement. To qualify as a residential structure under the CLA, the owner or lessee of the property must intend to reside in the structure once construction is complete. In this case the trial court erred by granting Mellon summary disposition on the construction lien claim because there

was a genuine issue of material fact as to whether the Carefs intended to or did reside in the property.

2. To establish a claim of unjust enrichment the complaining party must establish (1) that the other party received a benefit from the complaining party and (2) that the complaining party would suffer an inequity if the other party retained the benefit. The trial court in this case properly dismissed plaintiff's unjust enrichment claim against Mellon. Plaintiff failed to present evidence that he conferred a benefit to Mellon. Rather, Mellon had only acquired an interest in the property as a third party through the assignment of the mortgage executed by the Carefs. There was no allegation or evidence that Mellon requested any of the work performed and Mellon's retention of any benefit to the property is not unjust.

Reversed in part, affirmed in part, and remanded for further proceedings.

MECHANICS' LIENS — CONSTRUCTION LIEN ACT — RESIDENTIAL STRUCTURE — INTENT TO RESIDE IN STRUCTURE.

Under MCL 570.1114 of the Construction Lien Act (CLA), MCL 570.1101 *et seq.*, a construction lien for work performed on a residential structure is valid only if the contractor's work is completed pursuant to a written contract; the CLA defines "residential structure" as an individual residential condominium unit or a residential building containing not more than 2 residential units, the land on which it is or will be located, in which the owner or lessee contracting for the improvement is residing or will reside upon completion of the improvement; to qualify as a residential structure under the CLA, the owner or lessee of the property must intend to reside in the structure once construction is complete.

*R. J. Baker & Associates, PLLC* (by *Robert J. Baker*), for Edward Karaus, d/b/a Great Lakes Sea Walls.

*McClelland & Anderson, LLP* (by *Melissa A. Hagen*) and *Trott & Trott, P.C.* (by *Sarah Sleder*), for Bank of New York Mellon.

Before: HOEKSTRA, P.J., and BORRELLO and BOONSTRA, JJ.

PER CURIAM. In this construction lien and unjust enrichment case, plaintiff, Edward Karaus (doing busi-

ness as Great Lakes Sea Walls), appeals as of right the trial court's orders granting summary disposition in favor of defendant, Bank of New York Mellon (hereafter Mellon). For the reasons stated in this opinion, we affirm in part and reverse and remand in part for further proceedings consistent with this opinion.

This case revolves around plaintiff's efforts to receive compensation for construction work that he performed on a home owned by Sheldon and Nelly Caref (hereafter the Carefs), and commonly referred to as 1258 Fabun Road, located in Glenn, Michigan (hereafter "the property"). The Carefs purchased the property on March 19, 2004. In May 2004, plaintiff entered into an oral agreement with the Carefs to perform construction work on the property. Plaintiff continued to perform construction work on the property until 2006. Thereafter, between 2006 and 2009, plaintiff performed repair work on the property.

Plaintiff maintains that he was not paid in full for his work, and accordingly, on October 26, 2009, he recorded a construction lien. The claim of lien stated that plaintiff had first provided labor or materials for improvements to the property on May 1, 2004, and that plaintiff had last provided labor or materials on October 26, 2009. The lien stated that the contract amount was $405,000. Plaintiff acknowledged payment of $80,000, and accordingly claimed a construction lien upon the property in the amount of $325,000, plus $500 for the cost of the claim of lien for a total of $325,500 plus interest.

In July 2006, the Carefs refinanced their home loan. To do so, the Carefs borrowed $1,000,000 from Home Loan Corporation. The loan was secured by a mortgage encumbering the property in the same amount. The mortgage was recorded on June 5, 2007. The mortgage

was subsequently assigned to Mellon. At the time of the motion hearing, Mellon had not foreclosed on the mortgage.

On September 13, 2010, plaintiff filed a complaint against Mellon, PNC Bank,[1] and the Carefs. The complaint requested foreclosure of plaintiff's construction lien, alleged breach of contract against the Carefs only, and alleged unjust enrichment against all the parties. The Carefs did not respond to the complaint. On February 9, 2011, plaintiff filed a motion for entry of partial default judgment against the Carefs, and on June 2, 2011, the trial court entered an order for default judgment against the Carefs. The default judgment awarded a total of $356,511.73, with interest continuing to accrue, in favor of plaintiff.

On September 30, 2011, Mellon filed a motion for partial summary disposition pursuant to MCR 2.116(C)(10) in regard to plaintiff's construction lien claim. In support of its motion, Mellon argued that plaintiff's claim of lien was invalid because plaintiff failed to provide work pursuant to a written contract. Mellon cited MCL 570.1114, which is part of the Construction Lien Act (CLA), MCL 570.1101 *et seq.*, and provides that a contractor does not have a right to a construction lien on an interest in a residential structure unless the work was done pursuant to a written contract conforming to specific statutory requirements. In support of its contention that the property was residential, Mellon attached an affidavit executed by Sheldon Caref in which Sheldon averred that the property is residential, and that he and his wife "resided at the Property at different times between March 19, 2004 and 2009."

---

[1] All the claims against PNC Bank have been resolved, and PNC Bank is not a party to this appeal.

Plaintiff filed a response to Mellon's motion for partial summary disposition regarding the construction lien claim on October 20, 2011. Plaintiff argued that the property was not residential because at the time he was first contacted about performing work on the property, the property was owned by NXS, LLC, (a company that is owned and controlled by Sheldon Caref), and that the property was clearly an investment property. Plaintiff further stated that neither the Carefs nor any person involved with NXS, LLC ever intended to reside on the property. Thus, plaintiff maintained that the property was commercial. In support of his position, plaintiff attached his affidavit disputing the accuracy of the statement in Sheldon Caref's affidavit. Specifically, plaintiff states that the property was not habitable at the time it was purchased by the Carefs and NXS, LLC, and that once the property became habitable it was rented by third parties, and thus was not occupied by the Carefs.

On October 3, 2011, Mellon filed a motion for partial summary disposition pursuant to MCR 2.116(C)(8) and (C)(10) in regard to plaintiff's unjust enrichment claim. In support of its claim that summary disposition was proper, Mellon argued that plaintiff could not establish a prima facie case of unjust enrichment because Mellon did not receive a benefit from plaintiff and plaintiff had an adequate remedy at law. Plaintiff filed a brief in response, and argued that Mellon did receive a benefit because, but for plaintiff's improvements to the property, the entire area would have eroded and been uninhabitable. Plaintiff further argued that the legal remedy was not applicable.

The hearing regarding both motions for summary disposition was held on October 28, 2011. The parties presented arguments regarding the construction lien and

the unjust enrichment claims. The trial court rendered its decision on the record. Concerning the construction lien claim, the trial court granted summary disposition in favor of Mellon because it concluded that there was no material issue of fact regarding whether the property was residential. The trial court stated that it "accept[ed] the plaintiff's statement that the Carefs didn't occupy and use the property as a residence." However, the trial court found that the property was "occupied and used" by tenants, and that the fact that lessees had occupied and used the property as a residence rendered the property residential for purposes of the CLA. The trial court further noted that the language of the statute does not include a provision exempting residential properties that are only used by lessees. The trial court found that there was no written contract for services, and accordingly, found that Mellon was entitled to summary disposition because a construction lien on residential property is only valid if the work was done pursuant to a written contract. The trial court rejected plaintiff's argument that the letters between himself and the Carefs constituted a written contract, and found that at most it was a proposal from the Carefs to pay a certain amount for specified labor. The trial court further noted that the letters did not satisfy all the statutory requirements set forth in the CLA. Thus, the trial court stated that it was granting summary disposition pursuant to MCR 2.116(C)(8) and (C)(10).

In regard to the unjust enrichment claim, the trial court stated that summary disposition in favor of Mellon was proper because "there was an adequate legal remedy available to [plaintiff] and that finding and conclusion is decisive, pivotal in denying his unjust enrichment claim against [Mellon]." The trial court also stated that there was no "substantial factual foundation" regarding plaintiff's claim that the bank has been enriched. The trial court further elaborated, stating

that it was granting summary disposition pursuant to MCR 2.116(C)(8) and (C)(10) on the unjust enrichment claim because there was no material issue of fact regarding whether the bank was enriched because the bank and the Carefs did not "stand in the same position."

After the trial court issued its opinions granting Mellon's motions for summary disposition, plaintiff filed two motions for reconsideration, one addressing the trial court's decision on the construction lien claim and one addressing the trial court's decision on the unjust enrichment claim. Relevant to the issues on appeal in this case, plaintiff attached several additional exhibits to support his claim that the property was commercial, not residential, to his motion for reconsideration in regard to the commercial lien claim. These additional exhibits consisted of affidavits from Norman Fautz, Diana Decker, and Donald Karaus, as well as an excerpt from the Saugatuck/Douglas Visitor's Guide. The visitor's guide showed a photograph of the deck built by plaintiff, ostensibly as part of an advertisement for rental properties. All three of the affiants stated that Sheldon Caref expressed a desire to "flip" the property and make a profit. The affiants further all indicated that the property was an investment property, and indicated that Sheldon never expressed any intent to reside at the property. The trial court denied plaintiff's motions for reconsideration, finding that plaintiff had presented the same issues already ruled on by the court and that plaintiff had failed to demonstrate a palpable error by which the court and parties were misled in regard to both motions.[2]

---

[2] We note that Mellon argues that several exhibits submitted by plaintiff on appeal should not be considered by this Court in determining whether the trial court properly granted summary disposition in favor of

On appeal, plaintiff first argues that the trial court erred by granting summary disposition in favor of Mellon because the property at issue is not residential. We agree that the trial court erred, because fact questions exist that preclude summary disposition.

We review de novo a trial court's decision to grant summary disposition. *Coblentz v City of Novi*, 475 Mich 558, 567; 719 NW2d 73 (2006). Summary disposition pursuant to MCR 2.116(C)(10) tests the factual support for a claim based on the affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties. *Id*. The evidence is viewed in the light most favorable to the nonmoving party. *Id*. at 567-568. "Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law." *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). Summary disposition pursuant to MCR 2.116(C)(8) is proper if the nonmoving party failed to state a claim on which relief can be granted. *Kuznar v Raksha Corp*, 481 Mich 169, 176; 750 NW2d 121 (2008). Claims must be "so clearly unenforceable as a matter of law that no factual development could possibly justify recovery." *Id*. (quotation marks and citation omitted). In reviewing a trial court's decision to grant summary disposition pursuant to MCR 2.116(C)(8), we review the pleadings

Mellon because those exhibits were not presented to the trial court at the time of the hearing on Mellon's motions for summary disposition and were instead submitted only with plaintiff's motion for reconsideration. Mellon is correct that this Court's review of a trial court's decision on a motion for summary disposition is limited to the evidence that was presented to the trial court at the time the motion was decided. *Innovative Adult Foster Care, Inc v Ragin*, 285 Mich App 466, 475-476; 776 NW2d 398 (2009). Thus, we will not consider any evidence submitted on appeal that was not before the trial court at the time of the motion hearing. We note that on appeal plaintiff does not challenge the trial court's denial of its motion for reconsideration.

alone, accepting all factual allegations in the complaint as true and construing them in a light most favorable to the nonmoving party. *Id.*

When a party moves the trial court for summary disposition pursuant to MCR 2.116(C)(10), the "moving party must specifically identify the matters that it believes have no disputed factual issues." *St Clair Med, PC v Borgiel*, 270 Mich App 260, 264; 715 NW2d 914 (2006); MCR 2.116(G)(4).[3] "The moving party must support its position with affidavits, depositions, admissions, or other documentary evidence." *Borgiel*, 270 Mich App at 264. If the moving party meets its burden of supporting its position that there is no factual dispute in regard to any relevant matter, the burden shifts to the opposing party to show that a genuine issue of material fact exists. *Id.* The opposing party must support its position with substantively admissible evidence proffered in opposition to the motion. *Maiden*, 461 Mich at 121. A "mere promise" that a claim may be supported by evidence produced at trial is insufficient to avoid summary disposition under MCR 2.116(C)(10). *Id.*

We also review de novo issues of statutory interpretation. *Krohn v Home-Owners Ins Co*, 490 Mich 145, 155; 802 NW2d 281 (2011). The goal of statutory interpretation is to discern the intent of the Legislature

---

[3] MCR 2.116(G)(4) provides:

A motion under subrule (C)(10) must specifically identify the issues as to which the moving party believes there is no genuine issue as to any material fact. When a motion under subrule (C)(10) is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his or her pleading, but must, by affidavits or as otherwise provided in this rule, set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, judgment, if appropriate, shall be entered against him or her.

by examining the plain language of the statute. *Driver v Naini*, 490 Mich 239, 246-247; 802 NW2d 311 (2011). If the language of the statute is clear and unambiguous, the Legislature is presumed to have intended the meaning plainly expressed, and judicial construction is not permitted. *Id.* at 247. "It is well settled that the CLA is remedial in nature, and 'shall be liberally construed to secure the beneficial results, intents, and purposes of [the] act.' " *DLF Trucking Inc v Bach*, 268 Mich App 306, 311; 707 NW2d 606 (2005), quoting MCL 570.1302(1). "Substantial compliance with the provisions of [the CLA] shall be sufficient for the validity of the construction liens provided for in [the CLA], and to give jurisdiction to the court to enforce them." MCL 570.1302(1). "[T]he CLA was enacted for the dual purposes of (1) protecting the rights of lien claimants to payment for expenses and (2) protecting property owners from paying twice for these expenses." *Bach*, 268 Mich App at 311.

Relevant in this case, the CLA limits a contractor's right to a construction lien in regard to work performed on residential structures. MCL 570.1114 provides:

> A contractor does not have a right to a construction lien on the interest of an owner or lessee in a residential structure unless the contractor has provided an improvement to the residential structure pursuant to a written contract between the owner or lessee and the contractor and any amendments or additions to the contract are also in writing. The contract required by this section shall contain a statement, in type no smaller than that of the body of the contract, stating all of the following:
>
> (a) That a residential builder or a residential maintenance and alteration contractor is required to be licensed under article 24 of the occupational code, 1980 PA 299, MCL 339.2401 to 339.2412. That an electrician is required to be licensed under the electrical administrative act, 1956 PA 217, MCL 338.881 to 338.892. That a plumbing contrac-

tor is required to be licensed under the state plumbing act, 2002 PA 733, MCL 338.3511 to 338.3569. That a mechanical contractor is required to be licensed under the Forbes mechanical contractors act, 1984 PA 192, MCL 338.971 to 338.988.

(b) If the contractor is required to be licensed to provide the contracted improvement, that the contractor is licensed and the contractor's license number.

Thus, to have a valid construction lien for work performed on residential structures, contractors must have performed those improvements pursuant to a written contract that satisfies the statutory requirements. "Residential structure" is defined by the CLA, MCL 570.1106(3), as "an individual residential condominium unit or a residential building containing not more than 2 residential units, the land on which it is or will be located, and all appurtenances, in which the owner or lessee contracting for the improvement is residing or will reside upon completion of the improvement."

This Court has not addressed the scope of the CLA's definition of "residential structure" in a situation analogous to this one. This Court has previously concluded that property owned by a building company was a "residential structure" despite the fact that the building company did not intend to reside on the property upon completion of a home being built on the property because a third party (the Johanneses) contracted with the building company to have a home built for them to reside in on the property. *Kitchen Suppliers, Inc v Erb Lumber Co*, 176 Mich App 602, 605, 608-609; 440 NW2d 50 (1989). This Court explained that the property was residential as defined by the CLA despite the fact that the building company that owned the property did not intend to reside on the property because the Johanneses, "by virtue of their executory contract with [the building company] to purchase the property upon

completion of the house, were 'lessees'[4] as defined by the [CLA]." *Id*. at 609. This Court held that the house was a "residential structure" as defined by the CLA because "the Johanneses intended to, and did, reside in the house upon its completion." *Id*.

In *Titanus Cement Wall Co, Inc v Watson*, 158 Mich App 210, 217; 405 NW2d 132 (1987), this Court held that a single family residence was not a residential structure within the meaning of the CLA because the owner who contracted for the improvements to the home did not intend to reside in it upon its completion. This Court noted that it did not matter that a single family home would ordinarily be considered a residential structure because the statute's definition superseded the dictionary definition. *Id*.

Thus, on the basis of the plain language of the statute and this Court's interpretation and application of the CLA's definition of residential structure, the determining factor in regard to whether a property constitutes a residential structure or a commercial property is whether the owner or lessee contracting for the improvement *intends* to actually reside on the property on completion of construction. *Kitchen Suppliers*, 176 Mich App at 609; *Titanus Cement Wall Co, Inc*, 158 Mich App at 217. Thus, intent to reside in a structure is a prerequisite to that structure being a residential structure for purposes of the CLA.

In this case, the trial court found that there was no material issue of fact regarding whether the property was residential. The trial court stated that it "accept[ed] plaintiff's statement that the Carefs didn't occupy and use the property as a residence." However,

---

[4] Lessee is defined as "a person, other than the owner, who holds an interest, other than a security interest, in real property." MCL 570.1105(1).

the trial court found that the property was "occupied and used" by tenants, and that pursuant to this Court's decision in *Kitchen Suppliers*, the fact that lessees occupied and used the property as a residence rendered the property residential for purposes of the CLA.

We conclude that the trial court erred by granting summary disposition because there is a genuine issue of material fact in regard to whether the Carefs intended to or did reside on the property. Mellon, the moving party, presented an affidavit executed by Sheldon Caref wherein he stated that he and his wife "resided at the property at different times between March 19, 2004 and 2009" in support of its contention that the property is a "residential structure." Plaintiff, the opposing party, responded with an affidavit of his own stating that as soon as the property was habitable, the Carefs rented it out. Plaintiff further averred that the property was purchased by a company, and that it clearly appeared to be an investment property. Thus, plaintiff rebutted Mellon's evidence of the Caref's intent to reside in the property with evidence suggesting that the Carefs did not reside in the property, and in doing so established that there was a genuine issue of material fact for trial in regard to the Caref's intended use of the property. *Maiden*, 461 Mich at 121; *Borgiel*, 270 Mich App at 264.

The fact that there is a genuine issue of material fact is further underscored by the trial court's conclusion that it "accept[ed] plaintiff's statement that the Carefs didn't occupy and use the property as a residence." The trial court engaged in impermissible fact-finding when it concluded that the Caref's did not occupy and use the property as a residence. Further, the trial court's reason for granting summary disposition in favor of Mellon despite its finding that the property was never occupied by the Carefs, was a misapplication of the law. The trial

court concluded that summary disposition in favor of Mellon was required even though it had found that the Carefs never resided in the property. Relying on this Court's decision in *Kitchen Suppliers*, the Court concluded that because the lessees occupied and used the property as a residence, the property qualified as residential for purposes of the CLA. However, contrary to the trial court's decision, the *Kitchen Suppliers* case did not hold that a property is residential if it is occupied by lessees who use it as a residence. Rather, as discussed earlier, the *Kitchen Suppliers* case held that property owned by a company that did not intend to reside in the property still qualified as residential under the CLA because the company had a contract with a third party who in turn had contracted with the property owner to have a home built on the property in which the third party intended to reside. Thus, unlike this case, the third-party "lessees" in *Kitchen Suppliers* contracted for improvement to the property and intended to permanently reside on the property upon completion of the contracted-for improvements.

Next, plaintiff argues that the trial court erred by ruling that he failed to establish a prima facie case of unjust enrichment and also that the trial court erred by determining that plaintiff's unjust enrichment claim was barred because he had an adequate legal remedy.

Whether a claim for unjust enrichment can be maintained is a question of law that we review de novo. *Morris Pumps v Centerline Piping, Inc*, 273 Mich App 187, 193; 729 NW2d 898 (2006). Trial court rulings regarding equitable matters are also reviewed de novo. *Id.*

A claim of unjust enrichment requires the complaining party to establish (1) the receipt of a benefit by the other party from the complaining party and (2) an

inequity resulting to the complaining party because of the retention of the benefit by the other party. *Id.* at 195. If plaintiff in this case can establish that Mellon has been unjustly or inequitably enriched at its expense, the law will imply a contract to prevent the unjust enrichment. *Id.* Not all enrichment is unjust in nature, and the key to determining whether enrichment is unjust is determining whether a party unjustly received and retained an independent benefit. *Id.* at 196.

"One is not unjustly enriched . . . by retaining benefits involuntarily acquired which law and equity give him absolutely without any obligation on his part to make restitution." *Tkachik v Mandeville*, 487 Mich 38, 48; 790 NW2d 260 (2010) (quotation marks omitted), quoting *Buell v Orion State Bank*, 327 Mich 43, 56; 41 NW2d 472 (1950). Our Supreme Court explained that unjust enrichment describes "the result or effect of a failure to make restitution of or for property or benefits received under such circumstances as to give rise to a legal or equitable obligation to account therefor." *Buell*, 327 Mich at 56 (quotation marks and citation omitted).

An examination of the elements of unjust enrichment is dispositive of whether plaintiff has established his unjust enrichment claim. Again, in order to establish a claim of unjust enrichment, plaintiff must demonstrate: (1) the receipt of a benefit by the other party from the complaining party and (2) an inequity resulting to the complaining party because of the retention of the benefit by the other party. *Morris Pumps*, 273 Mich App at 195. Turning to the first element, plaintiff has not shown that he conferred a benefit to Mellon, because Mellon acquired its interest in the property through the assignment of the mortgage executed by the Carefs, not through any action of plaintiff. Thus, there was no

receipt of a benefit by Mellon from plaintiff. As stated by this Court in *Morris Pumps*, 273 Mich App at 196, quoting 66 Am Jur 2d, Restitution and Implied Contracts, § 32, p 628:

> A third party is not unjustly enriched when it receives a benefit from a contract between two other parties, where the party benefited has not requested the benefit or misled the other parties . . . . Otherwise stated, the mere fact that a third person benefits from a contract between two other persons does not make such third person liable in quasi-contract, unjust enrichment, or restitution. Moreover, where a third person benefits from a contract entered into between two other persons, in the absence of some misleading act by the third person, the mere failure of performance by one of the contracting parties does not give rise to a right of restitution against the third person.

Therefore, we conclude that Mellon has not received a benefit *from* plaintiff because if anything, Mellon has merely received the benefit from the contract between plaintiff and the Carefs.

Turning to the second element, to the extent that Mellon has retained a benefit from the work plaintiff performed on the property, it received that benefit only as a third party to the agreement between plaintiff and the Carefs. There is no allegation or evidence to support the contention that Mellon requested any of the work performed by plaintiff or misled plaintiff to receive any benefit. Further, there is no evidence that Mellon ever gave any assurance that it would pay for the work completed by plaintiff, nor that it was even aware of the work as it was being performed. In light of the fact that Mellon was completely uninvolved with any negotiations that had occurred before the work on the property was commenced, it cannot be said that any benefit Mellon does retain is unjust. Further, it is not clear that Mellon has even benefitted from plaintiff's labor be-

cause Mellon has not yet foreclosed on the property and merely retains a mortgage interest. Therefore, the trial court properly granted summary disposition in favor of Mellon in regard to plaintiff's unjust enrichment claim.[5]

Affirmed in part and reversed and remanded in part for further proceedings consistent with this opinion. We do not retain jurisdiction.

HOEKSTRA, P.J., and BORRELLO and BOONSTRA, JJ., concurred.

---

[5] In light of our conclusion that Mellon was not unjustly enriched by plaintiff, we need not consider whether plaintiff lacks an adequate legal remedy because Mellon is not liable to plaintiff regardless of whether plaintiff's legal remedy is adequate.