*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SHERRY KIDD,

Plaintiff-Appellant,

v

LIBERTY MUTUAL GENERAL INSURANCE
COMPANY,

Defendant,

and

WISSAM ALI SALAME,

Defendant-Appellee.

UNPUBLISHED
June 2, 2022

No. 357587
Wayne Circuit Court
LC No. 19-005769-NI

Before: SWARTZLE, P.J., and CAMERON and PATEL, JJ.

PER CURIAM.

Plaintiff Sherry Kidd and defendant Wissam Salame were involved in a low-speed-motor-vehicle accident. Kidd sought third-party no-fault benefits due to neck and back injuries she allegedly sustained as a result of the accident. Salame moved for summary disposition, arguing that Kidd did not sustain a serious impairment of body function from the accident. The trial court granted summary disposition to Salame, and we affirm.

## I. BACKGROUND

The accident occurred in October 2018; Kidd's airbags did not deploy and she was able to drive to lunch with friends afterwards. Kidd had a family member drive her to the hospital later that day. While at the hospital, Kidd complained of neck pain, and a computerized tomography (CT) scan was taken of her head and cervical spine. The cervical CT scan revealed "small disc bulge" at 2 levels, but the radiologist opined that there were no acute or traumatic findings. Kidd started a job as a waitress a few days later; she had been unemployed at the time of the accident.

-1-

Around the same time, Kidd's doctor prescribed physical therapy. Kidd stopped going to physical therapy at some point in 2019.

Kidd received magnetic resonance imaging (MRI) scans of her cervical and lumbar spine in April 2019. The lumbar scan revealed annular tears and herniated discs with nerve root compromise at two levels, while the cervical scan reflected annular tears, disc herniations, and a "C4-C5" disc bulge. Kidd filed her complaint a few days later, alleging that Salame negligently caused the accident and that she suffered a serious impairment of body function as a result of it. Salame denied fault and subsequently moved for summary disposition under MCR 2.116(C)(10).

Salame supported his motion for summary disposition with documents from Kidd's medical records. These documents showed that Kidd had severe back pain in January 2016 and later medical records from April 2017 and May 2018 noted chronic back pain. Salame also attached an independent medical examination from Dr. Matthew Sardelli. Dr. Sardelli performed his examination in May 2019, and concluded that Kidd's back pain was chronic and unrelated to the motor-vehicle accident. He also noted that Kidd suffered cervical spine strain and whiplash as a result of the accident, but that "she is in no need of any further therapies as it relates to the motor vehicle accident."

Salame additionally attached a transcript of Kidd's deposition to his motion. Kidd testified about her medical history and additionally claimed that her daily life was affected after the crash. Before the crash, Kidd spent time with her grandchildren, went to church twice a week, attended jazz concerts in the summers, and enjoyed going for walks. After the accident, Kidd spent less time with her grandchildren, although she admitted that was primarily because they were getting older. She did not attend any jazz concerts immediately after the accident because they were out of season, but she did attend some the following summer. She was unable to walk far distances and had difficulty with stairs due to back pain. Finally, Kidd did not attend church as often, in part, because the pain she experienced working her job as a waitress required her to rest on her time off to conserve her energy for work.

Kidd responded to Salame's motion and argued that the evidence before the trial court established that she suffered a serious impairment of body function, but she did not attach any additional medical evidence to her response. The trial court granted summary disposition to Salame, concluding that Kidd could not establish that she suffered a serious impairment of body function. Kidd then moved for reconsideration and attached, as exhibits to her motion, medical documentation that had not been presented to the trial court before it granted summary disposition to Salame. The trial court denied Kidd's motion for reconsideration, and this appeal followed.

## II. ANALYSIS

"We review de novo a trial court's decision to grant or deny a motion for summary disposition." *Sherman v City of St Joseph*, 332 Mich App 626, 632; 957 NW2d 838 (2020) (citations omitted). This Court reviews a motion brought under MCR 2.116(C)(10) "by considering the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party." *Patrick v Turkelson*, 322 Mich App 595, 605; 913 NW2d 369 (2018).

As an initial matter, we note that Kidd relies on exhibits she attached for the first time to her motion for reconsideration. But this Court considers only "what was properly presented to the trial court before its decision on the motion." *Pena v Ingham Co Rd Comm*, 255 Mich App 299, 310; 660 NW2d 351 (2003). Given this, documents attached for the first time to a motion for reconsideration should not be considered when reviewing a trial court's summary-disposition order. See *Karaus v Bank of New York Mellon*, 300 Mich App 9, 15 n 2; 831 NW2d 897 (2012); *Innovative Adult Foster Care, Inc v Ragin*, 285 Mich App 466, 474 n 6; 776 NW2d 398 (2009). Kidd specifically asks us to reverse the trial court's summary-disposition order, not its order denying her motion for reconsideration. Thus, we will not consider the exhibits attached for the first time to Kidd's motion for reconsideration.

As a general rule, a no-fault claim asserting a serious impairment of body function must be supported by medical evidence showing that the impairment was caused by the ownership, maintenance, or use of a motor vehicle. MCL 500.3135(1); *Patrick*, 322 Mich App at 607. Kidd's medical records show that she has a history of back pain before the accident and none of the records properly before us link her back pain after the accident or the findings on the lumbar MRI to the accident itself. Rather, Dr. Sardelli specifically concluded that Kidd's back pain was not linked to the accident. While defendant's expert linked plaintiff's neck injury to the accident and conceded that six to eight weeks of chiropractic and physical therapy treatment was reasonable, the records and testimony properly before us are insufficient to establish that plaintiff's neck injury affected her general ability to lead her normal life. Plaintiff testified that it was primarily her back pain, not her neck pain, that limited her daily life. Additionally, some of the changes in Kidd's daily life were not caused by the accident. Rather, they were caused by her grandchildren growing older and jazz concerts not being in season. Accordingly, the trial court did not err by concluding that Kidd did not suffer a serious impairment of body function.

## III. CONCLUSION

Affirmed. Salame, as the prevailing party, may tax costs under MCR 7.219.

/s/ Brock A. Swartzle
/s/ Thomas C. Cameron
/s/ Sima G. Patel