*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LORI ANN MOORE,

        Plaintiff-Appellee,

v

ROY CLYDE MOORE, JR.,

        Defendant-Appellant.

UNPUBLISHED
April 15, 2025
12:26 PM

No. 366999
Wayne Circuit Court
LC No. 22-101575-DO

Before: MALDONADO, P.J., and CAMERON and YOUNG, JJ.

PER CURIAM.

Defendant-husband, Roy Clyde Moore, Jr., appeals as of right the July 11, 2023 judgment of divorce. The judgment awarded plaintiff-wife, Lori Ann Moore, spousal support and divided the parties' property in a manner that was different than the distribution contemplated in the parties' prenuptial agreement (PNA). On appeal, defendant-husband argues the trial court failed to enforce the plain, unambiguous language of the PNA when dividing the parties' property, and the spousal-support award impoverished him. We hold the trial court erred as a matter of law by disregarding the PNA after determining it was a valid and enforceable agreement. We vacate both the property award and spousal-support award and remand for further proceedings.

## I. FACTUAL BACKGROUND

In April 2000, the parties married. At that time, both parties were employed, but plaintiff-wife earned more income and had more assets than defendant-husband. In the days leading up to the marriage, the parties executed a PNA outlining the parties' debts and assets, what constituted marital property, and what constituted separate property. Relevant to this appeal, the parties agreed the marital home, which plaintiff-wife owned before the marriage, would be marital property. However, the parties agreed the real and personal property that was not acquired with joint funds, and the parties' pensions, regardless of when they vested, would be separate property. The parties also agreed in the event of divorce, all marital property shall be divided equally, and they would not seek, or obtain, alimony, spousal support, or any relief other than a distribution consistent with the PNA. This was because each party had been self-supporting for a period of time before the

-1-

marriage, and, as stated in the PNA, "[b]oth parties fe[lt] that they [were] capable of future self-support and of maintaining themselves on a self-supporting basis."

In 2001, after the parties married and defendant-husband moved into the marital home, plaintiff-wife became a stay-at-home mother.[1] The parties dispute whether they agreed defendant-husband would financially support the family until he retired, or if defendant-husband wanted plaintiff-wife to return to the workforce after their youngest child began school. Regardless, it is undisputed that defendant-husband's retirement accounts continued to grow over the years while plaintiff-wife ceased making contributions to her 401(k) when she left her job. In 2009, defendant-husband purchased property on Beaver Island ("the Beaver Island property"), for $55,000. He took out a mortgage to purchase it and did not tell plaintiff-wife. Eventually, in June 2016, defendant-husband moved to Alaska to work for the Department of Homeland Security where he earned a higher salary and continued to increase the funds in his retirement accounts. Plaintiff-wife remained in Michigan, and defendant-husband visited two to three times per year.

In February 2022, after plaintiff-wife suspected defendant-husband was having an extramarital affair, plaintiff-wife filed for divorce. She requested an equitable division of the parties' property and spousal support despite the existence of the PNA. Plaintiff-wife also requested the trial court enter an order to preserve "the status quo" and "preserve the marital assets of the parties. . . ." Defendant-husband answered the complaint, asking that plaintiff-wife's request for spousal support be denied. The PNA was not mentioned by either party in the pleadings. The trial court entered interim financial orders in June 2022, requiring defendant-husband to deposit certain funds in the parties' joint bank account. The parties were also ordered to not dissipate the marital property.

Discovery commenced, and plaintiff-wife filed numerous motions to compel discovery and to compel defendant-husband to comply with the trial court's orders relating to the parties' finances. Plaintiff-wife alleged defendant-husband failed to automatically deposit his entire paycheck and disability benefits from the Veterans Administration (VA) into the parties' joint bank account. According to plaintiff-wife, defendant-husband "was having an allotment from his pay in the amount of $3,447.00 deposited into the joint account, and depositing the remainder of his pay into an unknown separate account." Plaintiff-wife alleged: "From June 4, 2022 to August 13, 2022 (last paystub received to date), Defendant Husband has diverted the sum of $2,430.79 from his payroll into a separate unknown account." While it appeared defendant-husband deposited his VA benefits into the joint account, the deposits were not directly from the VA. Rather, defendant-husband manually transferred $2,100 each month into the parties' joint account from a separate account. Plaintiff-wife also alleged defendant-husband was withdrawing more than $500 in cash each month from the joint account, in violation of the trial court's June 2022 order. In response, the trial court ordered the parties to cease using the debit card associated with their joint account.

After attempts at reaching a settlement failed, plaintiff-wife moved the trial court to hold the PNA was invalid and unenforceable, arguing defendant-husband swapped out pages of the

---

[1] The parties had one child together. When the parties married, plaintiff-wife had one child from a previous marriage, and defendant-husband had two children from a previous marriage.

original agreement to pages she had not previously seen or agreed to. In the alternative, plaintiff-wife argued enforcement of the PNA would create an inequitable result. Defendant-husband opposed the motion, and the trial court held it would consider evidence concerning the PNA at trial.

A bench trial was held over two days in February 2023. Plaintiff-wife admitted she executed the PNA, but denied she understood its terms. Plaintiff-wife testified that defendant-husband acquired the PNA off the internet, and no one reviewed the PNA on her behalf. She testified she only reviewed the signature page and financial information presented to her by defendant-husband, which reflected her income and net worth at the time of the marriage. Plaintiff-wife did not know of the terms of the PNA until February 2022, even though she had it in her possession during the marriage. She testified she "had no idea" the PNA "had anything to do with what [they] acquired during the marriage." According to defendant-husband, however, the parties spent a significant amount of time before the marriage drafting the PNA to protect plaintiff-wife's assets.

Plaintiff-wife had not worked since May 2001. When asked what kind of income she might be able to earn, plaintiff-wife stated: "I have no idea. . . . I'm sure there's plenty of low-end jobs available that I could take, but I'm sure they would be at the, you know, minimum wage, whatever that is these days." Plaintiff-wife did not seek employment during the proceedings because she was caring for her aging parents. Plaintiff-wife acknowledged, under the PNA, she was only entitled to her 401(k) and half of the equity in the marital property. She testified she would be unable to support herself if the PNA was enforced. Plaintiff-wife believed "a fair settlement" was half of the value of "what accrued during the marriage[.]"

In an April 12, 2023 opinion and order, the trial court concluded the PNA was a valid and enforceable contract, and plaintiff-wife "failed to meet her burden to invalidate the [PNA]." However, the trial court found enforcing the PNA would be inequitable because of the length of the marriage, the amount of time plaintiff-wife had been out of the workforce, and her contributions to the marital estate. The trial court then purported to equitably divide the parties' assets and debts, including awarding plaintiff-wife property that was deemed defendant-husband's separate property under the PNA as well as 50% of defendant-husband's retirement accounts and 100% of her 401(k). The trial court also granted plaintiff-wife $3,000 in monthly spousal support for a 10-year period. The trial court's rulings were distilled in the July 11, 2023 judgment of divorce. This appeal followed.

## II. ANALYSIS

Defendant-husband argues the trial court erred as a matter of law because it disregarded the PNA when dividing the parties' property, even though the trial court found the PNA was valid and enforceable. We agree.

## A. STANDARDS OF REVIEW

"Since postnuptial and other marital agreements are contracts, we are guided by contract principles in reviewing the agreement." *Skaates v Kayser*, 333 Mich App 61, 71; 959 NW2d 33 (2020). We "review de novo the trial court's interpretation of a contract as well as its ruling on

legal questions that affect the contract's validity." *Id.* "Trial court rulings regarding equitable matters are also reviewed de novo." *Karaus v Bank of NY Mellon*, 300 Mich App 9, 22-23; 831 NW2d 897 (2012). "A trial court's refusal to enforce a prenuptial agreement is reviewed for an abuse of discretion." *Woodington v Shokoohi*, 288 Mich App 352, 372; 792 NW2d 63 (2010). "An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes." *Id.* at 355.

The standard of review in divorce actions was stated by this Court in *Welling v Welling*, 233 Mich App 708, 709; 592 NW2d 822 (1999):

> In a divorce case, this Court must first review the trial court's findings of fact regarding the valuations of particular marital assets under the clearly erroneous standard. A finding is clearly erroneous if, after a review of the entire record, the reviewing court is left with the definite and firm conviction that a mistake has been made. This Court gives special deference to a trial court's findings when they are based on the credibility of the witnesses. If the trial court's findings of fact are upheld, this Court must decide whether the dispositive ruling was fair and equitable in light of those facts. The dispositional ruling is discretionary and should be affirmed unless this Court is left with the firm conviction that the division was inequitable. [Quotation marks and citation omitted.]

## B. PROPER ENFORCEMENT OF PRENUPTIAL AGREEMENTS

Prenuptial agreements governing the division of property in the event of divorce are enforceable in Michigan. *Reed v Reed*, 265 Mich App 131, 142; 693 NW2d 825 (2005). "[P]renuptial agreements are contracts subject to the rules governing construction of contracts generally." *Id.* at 149. In interpreting a contract, it is a court's obligation to determine the intent of the parties by examining the language of the contract according to its plain and ordinary meaning. *Woodington,* 288 Mich App 352, 374; 792 NW2d 63 (2010). If the contractual language is unambiguous, courts must interpret and enforce the contract as written, because an unambiguous contract reflects the parties' intent as a matter of law. *Id.*

However, "such agreements may be voided if certain standards of fairness are not satisfied." *Reed*, 265 Mich App at 142 (quotation marks and citation omitted). Prenuptial agreements "may be voided (1) when obtained through fraud, duress, mistake, or misrepresentation or nondisclosure of material fact, (2) if it was unconscionable when executed, or (3) when the facts and circumstances are so changed since the agreement was executed that its enforcement would be unfair and unreasonable." *Id.* at 142-143. "Finally, where the agreement is challenged, the burden of proof and persuasion is on the party challenging its validity." *Rinvelt v Rinvelt*, 190 Mich App 372, 379; 475 NW2d 478 (1991), citing *In re Benker's Estate*, 416 Mich 681, 684; 331 NW2d 193 (1982).

In this case, the parties entered into a PNA which outlined what constituted marital property and separate property. Under the PNA, the following was separate property: (1) pension benefits, regardless of when they vested; (2) retirement accounts; (3) personal property owned at the time the PNA was executed, or "later acquired"; (4) real property owned at the time the PNA was executed or "later acquired," except for the marital home and real property acquired with joint

-4-

funds; (5) income derived from the parties' real, or personal, property; (6) except funds placed in joint accounts, "all of the earnings and accumulations resulting from the other spouse's personal services, skills, efforts, work, and investment earnings, together with all property acquired or income derived from such sources"; (7) "[a]ll property acquired by either party by gift, devise, bequest, or inheritance"; (8) investments; and (9) all other sources of income not specifically referenced in the PNA. The parties were responsible for their premarital debts. They were jointly responsible for joint debts incurred during the marriage.

Plaintiff-wife argued in the trial court that the PNA should be voided, citing some of the grounds in *Reed*, 265 Mich App at 142. The trial court began the proceedings correctly, considering plaintiff-wife's arguments and determining plaintiff-wife failed to meet her burden of proof that the PNA was void. Defendant-husband now argues the trial court erred as a matter of law because following its decision that the PNA was not void under *Reed*, the trial court disregarded the PNA when dividing the parties' property and debts. We agree with defendant-husband in this regard.

After deciding the PNA was a valid and enforceable contract, the trial court needed to enforce its terms—dividing property into marital and separate property based on their definitions in the PNA, *before* resorting to equitable considerations. It did not do so, instead resorting to equitable considerations right away and dividing property into marital and separate property based on its own judgment. *Reed*, 265 Mich at 150. This was an abuse of discretion. *Woodington*, 288 Mich App at 372.

Specifically, the trial court classified the following assets as marital property without regard to the PNA: (1) the Beaver Island property; (2) defendant-husband's thrift savings plan; (3) the portion of defendant-husband's individual retirement account (IRA) that accrued during the marriage; (4) defendant-husband's Federal Employee Retirement System (FERS) pension; and (5) defendant-husband's military retired pay. The trial court ignored the PNA's language with respect to defendant's retirement accounts. In contrast, the trial court awarded plaintiff-wife her entire 401(k). The trial court did so because it deemed plaintiff's 401(k) to be separate property—not because this result was in compliance with the plain language of the PNA. Indeed, the parties married in April 2000, and plaintiff-wife left her employment in May 2001, but a portion of the 401(k) accrued during the marriage. And with regard to the Beaver Island property, the trial court found it was marital property despite it being defendant-husband's separate property under the PNA.

We do not rule here that a court cannot find the property distribution in a PNA inequitable. A trial court can. However, in reaching an equitable division, the trial court must first determine what property is considered marital property and what property is considered separate property. *Cunningham v Cunningham*, 289 Mich App 195, 200-202; 795 NW2d 826 (2010). Here, the PNA the trial court found to be valid did just that. Once the trial court decided what was marital and what was separate property *according to the PNA*, only then could the trial court consider matters of equity.

The Legislature has provided statutory exceptions that allow the trial court to invade the parties' separate property to balance the equities in rendering a divorce judgment. MCL 552.23(1) (emphasis added) states:

Upon entry of a judgment of divorce or separate maintenance, if the estate and effects awarded to either party are *insufficient for the suitable support and maintenance of either party* and any children of the marriage who are committed to the care and custody of either party, *the court may also award to either party the part of the real and personal estate of either party and spousal support out of the real and personal estate*, to be paid to either party in gross or otherwise as the court considers just and reasonable, after considering the ability of either party to pay and the character and situation of the parties, and all the other circumstances of the case.

MCL 552.401 states:

The circuit court of this state may include in any decree of divorce or of separate maintenance entered in the circuit court appropriate provisions awarding to a party all or a portion of the property, either real or personal, owned by his or her spouse, as appears to the court to be equitable under all the circumstances of the case, if it appears from the evidence in the case that the party contributed to the acquisition, improvement, or accumulation of the property. The decree, upon becoming final, shall have the same force and effect as a quitclaim deed of the real estate, if any, or a bill of sale of the personal property, if any, given by the party's spouse to the party.

This Court has spoken on how these exceptions affect the enforcement of prenuptial agreements:

[P]arties to a divorce cannot, through [pre]nuptial agreement, compel a court of equity to order a property settlement that is inequitable. Although parties have a fundamental right to contract as they see fit, they have no right to do so in direct contravention of this state's laws and public policy. [*Allard v Allard (On Remand)*, 318 Mich App 583, 600-601; 899 NW2d 420 (2017).]

This procedure balances "the fundamental right to contract" freely while allowing a trial court discretion "to afford whatever relief is necessary" to ensure neither party is impoverished by the divorce judgment, which would be contrary to the public policy of this state. *Id*. at 596. The trial court's failure to enforce the PNA as written impacted the trial court's overall decision concerning equitable division of the parties' property. *Reed*, 265 Mich at 150; *Allard (On Remand)*, 318 Mich App at 603. We vacate and remand the property award for the trial court to adhere to the procedure outlined in our caselaw where prenuptial agreements are at issue.

## C. SPOUSAL SUPPORT AWARD

Because revisiting the division of the parties' property may affect the trial court's determination concerning the amount and length of any spousal-support award, we also vacate the spousal-support award. Indeed, an "alimony award goes hand in glove with the property distribution[.]" *Magee v Magee*, 218 Mich App 158, 165; 553 NW2d 363 (1996). And while we acknowledge the parties agreed in the PNA that neither would ever seek spousal support, defendant-husband's challenge to the very fact the trial court awarded plaintiff-wife spousal support is misplaced.

Our caselaw is clear that the trial court's equitable authority to ensure neither party is impoverished by a property settlement overrides the parties' ability to contract around spousal support. In *Allard (On Remand)*, 318 Mich App at 602, this Court held the trial court erred when it declined to award spousal support simply because the parties signed a prenuptial agreement waiving spousal support, even though equity demanded one spouse was entitled to such support to maintain the parties' minor child. Parties to a divorce action cannot, through a PNA, waive the trial court's discretion under MCL 552.23(1) to fully consider "the ability of either party to pay [spousal support] and the character and situation of the parties, and all other circumstances of the case," if the court is called upon to make a spousal-support determination. Stated differently, although the parties may enter into an agreement waiving spousal support, see *Lentz v Lentz*, 271 Mich App 465, 471; 721 NW2d 861 (2006); once a decision regarding spousal support is actually before the trial court, any agreements to restrict the equitable authority granted to the trial court under MCL 552.23(1) is necessarily void as against both statute and public policy. *Allard (On Remand)*, 318 Mich App at 601.

As already discussed, this case must be remanded for reconsideration of the property award. Further, "[t]he objective of spousal support is to balance the incomes and needs of the parties in a way that will not impoverish either party, and support is to be based on what is just and reasonable under the circumstances of the case." *Woodington*, 288 Mich App at 256. Once the trial court has devised a property settlement following the procedure outlined above, it may, on remand, determine whether a spousal-support award is equitable and award one accordingly.

## III. CONCLUSION

We vacate the property and spousal-support awards and remand for further proceedings consistent with this opinion. The trial court may hold additional hearings and receive additional exhibits and testimony as, in its discretion, it deems necessary. See *Cunningham*, 289 Mich App at 210. We do not retain jurisdiction.

/s/ Allie Greenleaf Maldonado
/s/ Thomas C. Cameron
/s/ Adrienne N. Young