*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

QUICK DRAW TARPAULIN SYSTEMS INC,

        Plaintiff-Appellant,

and

DEMONTE FABRICATING LTD,

        Plaintiff,

v

GLIDER SYSTEMS OF MICHIGAN LLC and
MIKE HAGELL,

        Defendants-Appellees.

UNPUBLISHED
January 12, 2023

Nos. 358288, 359182
Wayne Circuit Court
LC No. 20-014309-CB

Before: CAVANAGH, P.J., and O'BRIEN and RICK, JJ.

PER CURIAM.

Plaintiff-appellant, Quick Draw Tarpaulin Systems, Inc.,[1] appeals as of right the trial court's order granting summary disposition in favor of defendants, Glider Systems of Michigan, LLC (Glider Michigan) and Mike Hagell, under MCR 2.116(C)(10). Quick Draw also challenges the trial court's order granting defendants' request for sanctions, and argues that it was entitled to a hearing on the reasonableness of defendants' requested attorney fees. For the reasons explained in this opinion, we affirm.

---

[1] The claims of the other plaintiff in this case, DeMonte Fabricating, were dismissed with prejudice earlier in this action. That order has not been contested in this appeal.

-1-

## I. BACKGROUND

DeMonte Fabricating Ltd. is a Canadian corporation established in 1978 that specializes in creating, designing, manufacturing, and marketing "steel, aluminum, and stainless steel industrial products," including kits for its "rolling-type tarpaulin systems for trucks." Quick Draw is a Michigan corporation that manufactures and markets DeMonte's systems, primarily specializing in selling and installing DeMonte's rolling-type tarpaulin systems. Glider Systems, Inc. (Glider) is a Canadian corporation that is a competitor of Quick Draw as it also manufactures and markets rolling-type tarpaulin systems for trucks. Glider Michigan is a Michigan corporation that is distinct from Glider, though both are owned by the same person. Glider Michigan repairs and installs Glider's rolling-type tarpaulin systems.

Hagell worked as a salesman for Quick Draw from 2012 to 2020, working most recently as an "Account Specialist." As part of his employment, Hagell signed noncompete and confidentiality agreements with Quick Draw. Hagell quit Quick Draw on August 14, 2020, and began working in a sales job for Glider shortly thereafter.

On September 8, 2020, Quick Draw sent a letter to Hagell reminding him of his obligations pursuant to the noncompete and confidentiality agreements he signed with Quick Draw. On the same day, Quick Draw sent a letter to Glider Michigan informing it of Hagell's agreements with Quick Draw and cautioning Glider Michigan that Quick Draw could take legal action if it continued employing Hagell.

On September 22, 2020, Glider's attorney responded to Quick Draw's letter, stating that Glider had "not received any intellectual property from Mr. Hagell, let alone any relating to Quick Draw, tarps, or tarp systems." Glider's attorney further asserted that Quick Draw's noncompete was overly broad. Glider's attorney concluded his response by stating, "we trust that this letter resolves your concerns."

The letter did not resolve Quick Draw's concerns, however, and Quick Draw filed a complaint against Hagell and Glider Michigan (as opposed to Glider) on October 29, 2020, alleging five counts. Count I alleged breach of contract. Quick Draw maintained that Hagell breached his noncompete and confidentiality agreements by being employed by Glider Michigan "and invariably using and disclosing Quick Draw trade secrets." Quick Draw requested an injunction because it was allegedly being "irreparably injured" by Hagell's continued employment with Glider Michigan. Count II alleged breach of fiduciary duties, but that count is not pursued on appeal. Count III alleged breach of the Michigan Uniform Trade Secrets Act (MUTSA), MCL 445.1901 *et seq*. Quick Draw alleged that it maintained a number of trade secrets—including customer lists and pricing information—that Hagell previously had access to as they were necessary for his employment as a salesman with Quick Draw. Quick Draw further alleged that Hagell, now as a salesman for Glider Michigan, was "misappropriating trade secrets of Quick Draw in violation of the" MUTSA, though it did not specify which trade secrets Hagell was misappropriating. Count IV alleged conversion and misappropriation, in which Quick Draw essentially made the same arguments as it did under the MUTSA—that Hagell had misappropriated Quick Draw's trade secrets and was using them to further Glider Michigan's interests to Quick Draw's detriment. Count V alleged unjust enrichment, arguing that defendants'

actions described throughout the complaint unjustly enriched defendants and damaged Quick Draw.

After the suit was filed, Glider's attorney sent a letter to Quick Draw's attorney informing him that Hagell was not employed by Glider Michigan, but was an employee of Glider (the Canadian entity). The letter also repeated Glider's request that Quick Draw identify the trade secrets that Hagell allegedly retained or disclosed.

On February 24, 2021—about four months after the complaint was filed and while discovery was ongoing—Quick Draw moved to amend its complaint to name the proper Glider entity as a defendant and to add a count for "tortious interference with existing business relations and prospective business relations." The complaint kept Glider Michigan as a defendant. Quick Draw failed to file a praecipe, however, so this motion was never scheduled to be heard and defendants never formally responded to it.

Despite no formal response, defendants' counsel reviewed the proposed amended complaint and sent a letter to Quick Draw's counsel informing him of alleged deficiencies in the proposed amended complaint. Defendants' counsel noted, again, that Hagell did not work for Glider Michigan, but Quick Draw was still proposing to keep Glider Michigan as a defendant in the case. Defendants' counsel closed the letter by informing Quick Draw that defendants intended to seek sanctions if Quick Draw continued to pursue factually and legally-baseless claims.

Quick Draw filed a second motion to amend its complaint on April 9, 2021. This second motion was the same as Quick Draw's first motion to amend its complaint. The trial court denied Quick Draw's motion, stating:

> Although leave is typically freely given to amend, here Plaintiff's amendments are futile because they restate previous arguments and fail to state a claim. Moreover, delay in naming the proper party was dilatory. Finally, given that discovery is almost closed defendant will be prejudiced.

On June 14, 2021, defendants moved for summary disposition under MCR 2.116(C)(10). Defendants argued, as relevant to this appeal, that Quick Draw's claim for breach of contract related to both the noncompete and confidentiality agreements must be dismissed because Quick Draw could not produce any evidence that it suffered any damages as a result of an alleged breach. Turning to Quick Draw's trade-secrets claim and its claim for conversion and misappropriation, defendants argued that those claims must be dismissed because Quick Draw could not produce any evidence that Hagell had possessed or misappropriated anything belonging to Quick Draw, including any trade secrets. As to Quick Draw's claim for unjust enrichment, defendants argued that, because Quick Draw had an express contract with Hagell addressing the use and disclosure of confidential information, Quick Draw's unjust-enrichment claim premised on Hagell's misuse of confidential information failed as a matter of law.

In response, Quick Draw argued that Hagell had clearly violated the noncompete agreement by going to work for Quick Draw's direct competitor and soliciting Quick Draw's customers on behalf of Glider, and that Quick Draw was damaged by this because it "has experienced a sales downturn relative the very same customers that Mr. Hagell has contacted on

behalf of Glider." It further argued that Hagell had access to confidential information while working as a salesman at Quick Draw, including Quick Draw's "pricing, sales and purchasing information." Quick Draw contended that this type of information was "precisely the type of information which may be improperly used by a direct competitor to unfairly compete with Quick Draw and steal sales away from Quick Draw."

In reply, defendants argued that Quick Draw did not actually provide evidence that it had suffered any damages, let alone its claimed loss of sales. Defendants also argued that Quick Draw did not provide any evidence that Hagell actually used any of the information that Quick Draw claimed was confidential.

There was apparently a hearing on defendants' dispositive motion on August 11, 2021, but there is no record of the hearing in the Register of Actions, nor is there a transcript of the hearing included in the lower court record. Yet, on August 19, 2021, the trial court granted defendants' motion for summary disposition "for the reasons stated on the record."[2]

After the hearing on defendants' dispositive motion but before the trial court formally issued its order granting defendants' motion for summary disposition, defendants filed a motion for fees and costs on August 16, 2021. Defendants argued that they were entitled to attorney fees under MCL 445.1905 and MCL 600.2591. With respect to their claim under MCL 600.2591, defendants argued that Quick Draw's complaint was frivolous for three reasons. They first argued that the complaint was frivolous because it contained false statements, including that Hagell had used trade secrets and would continue to use trade secrets, and that this action had damaged Quick Draw. Second, they argued that Quick's Draws claims were devoid of legal merit, as the facts underlying Quick Draw's legal positions were untrue. Third, they argued that Quick Draw's purpose in filing its complaint was to harass and injure defendants, as demonstrated by the fact that defendants informed Quick Draw on numerous occasions about the deficiencies of its allegations and the parties involved, but Quick Draw ignored defendants' warnings and pursued its complaint as filed.

Defendants requested $135,468 in attorney fees and $2,224.94 in costs. In support of their request for attorney fees, defendants first justified why their requested hourly rate was reasonable, then justified why the number of hours they expended on this case was reasonable (supported by a breakdown of the hours billed), and finally argued that a downward adjustment was not appropriate, addressing the factors listed by the Michigan Supreme Court in *Pirgu v United Services Auto Ass'n*, 499 Mich 269, 282; 884 NW2d 257 (2016).

Quick Draw responded to defendants' motion on September 24, 2021. Addressing defendants' frivolity argument, Quick Draw asserted that its claims were not frivolous because its

---

[2] The parties are aware of the missing transcript, and Quick Draw filed a motion to settle the record in the trial court because this transcript was "unavailable." Unfortunately, the motion to settle the record was denied because, according to the trial court, the motion was "untimely and its proposed statement of the record [was] inaccurate." Thus, this Court is left with no record of what occurred at the August 11, 2021 hearing, including the reasons that the trial court granted defendants' motion for summary disposition.

counsel conducted an investigation before filing the complaint and, based on the information uncovered during that investigation, reasonably inferred that Hagell was misappropriating trade secrets and was in breach of his agreements with Quick Draw. As to the requested fees themselves, Quick Draw summarily asserted (1) that the amount was "not reasonable at all for the issues raised in this litigation considering all the actions involved," and (2) that it was "entitled to an evidentiary hearing" on the reasonableness of defendants' requested fees.

The trial court held a hearing on defendants' motion on October 8, 2021. Both parties stated that they would rely on their briefs, and then the trial court delivered a ruling from the bench. The court found that sanctions were warranted, explaining that Quick Draw needed some evidence of liability beyond speculation or conjecture before it filed its complaint. The court explained that Quick Draw's beliefs could have moved beyond mere speculation or conjecture by contacting its customers to "determine if [Hagell] had anything to do with their decisions not to buy their tarps in 2021." The court emphasized that "reasonably inferring is not enough." The court then turned to Quick Draw's decision to keep Glider Michigan in the case as a party, despite its many opportunities to dismiss Glider Michigan as an improper party. The court opined that this was a "tactical business decision" that was clearly "not correct." Turning to the amount of fees and costs requested, the trial court reasoned that an evidentiary hearing was not required because defendants provided "a detail [sic] accounting and the hourly rates have not been challenged as unreasonable or that the hours are formed are not what they actually did."

This appeal followed.

## II. SUMMARY DISPOSITION

Quick Draw first argues that the trial court erred by dismissing Quick Draw's claims for breach of contract, misappropriation of trade secrets, and unjust enrichment.

## A. STANDARD OF REVIEW

A trial court's decision on a motion for summary disposition is reviewed de novo. *Michigan Assn of Home Builders v City of Troy*, 504 Mich 204, 211; 934 NW2d 713 (2019). Defendants moved for summary disposition under MCR 2.116(C)(10). In *Maiden v Rozwood*, 461 Mich 109, 119-120; 597 NW2d 817 (1999), our Supreme Court explained the process for reviewing a motion filed under MCR 2.116(C)(10):

> A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion. Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law. [*Maiden*, 461 Mich at 120.]

A genuine issue of material fact exists when, after viewing the evidence in a light most favorable to the nonmoving party, reasonable minds could differ on the issue. *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008).

A moving party can satisfy its burden under MCL 2.116(C)(10) by either submitting affirmative evidence that negates an essential element of the nonmoving party's claim or by demonstrating to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim. *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 7; 890 NW2d 344 (2016). Once this initial burden is met, the burden moves to the nonmoving party, who must "set forth specific facts showing that a genuine issue of material fact exists" and "may not rely on mere allegations or denials in the pleadings." *Id.* "If the opposing party fails to present documentary evidence establishing the existence of a material factual dispute, the motion is properly granted." *Id.*

## B. BREACH OF CONTRACT

Quick Draw first argues that the trial court erred by granting summary disposition in favor of defendants on Quick Draw's breach of contract claims. We disagree.

"The party asserting a breach of contract has the burden of proving its damages with reasonable certainty, and may recover only those damages that are the direct, natural, and proximate result of the breach." *Alan Custom Homes, Inc v Krol*, 256 Mich App 505, 512; 667 NW2d 379 (2003). See also *Stewart v Rudner*, 349 Mich 459, 468-469; 84 NW2d 816 (1957).

When they moved for summary disposition, defendants presented evidence supporting their assertion that Quick Draw could not produce evidence that it had suffered any damages as a result of Hagell's alleged breach of his contracts with Quick Draw. See *Lowrey*, 500 Mich at 7 (explaining how a moving party can carry its burden in a motion under MCR 2.116(C)(10)). Defendants first cited to Quick Draw's interrogatory response in which it admitted that it did not have sufficient information at the time to "detail and itemize the amount of [its] damages." Defendants noted that, while Quick Draw represented that it would supplement this response when it obtained additional information, it never did so. In further support of their assertion that Quick Draw was unable to establish that it suffered any damages from Hagell's alleged breach of the contracts, defendants pointed to the deposition testimony of Richard LaPointe, who Quick Draw designated as its representative under MCR 2.306(B)(3). When asked to identify the damages that Quick Draw had suffered, LaPointe said "loss of sales," but was unable to identify a single customer or sale that Quick Draw had lost as a result of Hagell's alleged breach of the contracts. He also could not identify any Glider customers that were previously Quick Draw customers. LaPointe additionally alleged that Quick Draw's "reputation" had been damaged by Hagell's breach of the contracts, but he admitted that he did not know what Hagell had said to customers. With this evidence, defendants demonstrated that Quick Draw was unable to establish that it had suffered any damages from Hagell's alleged breach of the contracts, and the burden moved to Quick Draw, as the nonmoving party, to establish at least a question of fact whether it had suffered damages as a result Hagell's alleged breach of contract.

In the trial court, Quick Draw argued that it had suffered damages in the form of a loss of sales as a result of Hagell's breach of the contracts. Quick Draw argued that it had "experienced a sales downturn relative the very same customers that Mr. Hagell has contacted on behalf of Glider," and that this "downturn cannot be solely attributed to other factors . . . ." Quick Draw supported this contention with an affidavit from LaPointe that accompanied Quick Draw's response to defendants' motion. In that affidavit, LaPointe averred that Quick Draw had

-6-

"experienced lost sales to the customers which Mr. Hagell has sold rolling tarpaulin systems [to] on behalf of Glider," and that the loss in sales "cannot solely be attributed to other factors such as business uncertainty during the Covid pandemic . . . ." These assertions, however, contradicted LaPointe's deposition testimony that he was unable to identify a customer or sale that Quick Draw had lost to Glider due to Hagell's work for Glider. Therefore, Quick Draw could not rely on LaPointe's statement in his affidavit to create an issue of fact. See *Atkinson v City of Detroit*, 222 Mich App 7, 11; 564 NW2d 473 (1997) ("It is well settled that a party may not create an issue of fact by submitting an affidavit that contradicts prior deposition testimony.").

Even ignoring this and accepting the contents of LaPointe's affidavit as true, it did not tend to establish that Hagell's alleged breach of the contracts led to a decrease in sales. Quick Draw, as the plaintiff, had the burden of establishing that Hagell's alleged breach of the contracts damaged Quick Draw. See *Alan Custom Homes, Inc*, 256 Mich App at 512. LaPointe vaguely suggested that Quick Draw's downturn in sales "cannot solely be attributed to other factors such as business uncertainty during the Covid pandemic," but that does not in turn suggest that the downturn in sales was a result of Hagell's alleged breach of the contracts. Any such conclusion reached on the basis of LaPointe's affidavit would be speculation, and speculation cannot create a jury question. See *Estate of Trueblood v P&G Apartments, LLC*, 327 Mich App 275, 288; 933 NW2d 732 (2019). Quick Draw, as the plaintiff, bore the burden of proving the elements of its claim, which it failed to do.

On appeal, Quick Draw rehashes the arguments that it made in the trial court. It again relies on LaPointe's affidavit to assert that Quick Draw has seen a downturn in sales from customers that Hagell contacted while at Glider, and argues that this is evidence that Hagell damaged Quick Draw by breaching the agreements he had with it. As previously explained, however, LaPointe stated at his deposition that he could not identify any sales or customers that Quick Draw lost due to Hagell's alleged breach of the contracts, so LaPointe's after-the-fact affidavit suggesting that he can, actually, identify sales that Quick Draw lost due to Hagell's breach of the agreements cannot create a question of fact. See *Atkinson*, 222 Mich App at 11. Quick Draw otherwise argues that it was damaged because Hagell testified that he contacted "30-40 Quick Draw customers" and "that [Hagell] has made approximately 35 sales of Glider systems." However, Hagell's contacting Quick Draw customers and selling Glider systems to those customers does not, standing alone, support that Quick Draw was damaged by Hagell's alleged breach of the contracts.

In one paragraph, Quick Draw asserts that it did not need to prove damages at all because it sought injunctive relief, and its noncompete with Hagell explicitly provided that it could receive injunctive relief without proving damages. Quick Draw has abandoned this argument on appeal, however, because it provided no caselaw or other authority to support its position. See *Mitcham v City of Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959). Moreover, Quick Draw never raised this argument in the trial court in response to defendants' motion for summary disposition, so it is waived on appeal. See *Walters v Nadell*, 481 Mich 377, 387; 751 NW2d 431 (2008).

Regardless, Quick Draw was denied injunctive relief by the trial court early in this action because the court concluded that Quick Draw could not establish that it would suffer irreparable harm if the contracts were not enforced. If Quick Draw is arguing that it need not prove damages because it is seeking injunctive relief, then Quick Draw needs to address the basis for the trial

court's denial of its request for injunctive relief. Quick Draw's failure to do so is yet another reason to consider this argument abandoned on appeal. See *Redmond v Heller*, 332 Mich App 415, 449; 957 NW2d 357 (2020) (explaining that an appellant abandons an issue on appeal when it fails to challenge or dispute the basis of the trial court's ruling).[3]

## C. MISAPPROPRIATION OF TRADE SECRETS

Quick Draw next argues that the trial court erred by dismissing its trade-secret claim because it presented evidence creating a question of fact whether Hagell misappropriated Quick Draw's trade secrets. We disagree.

The MUTSA provides that "Actual or threatened misappropriation may be enjoined." MCL 445.1903(1). "Misappropriation" as used in the MUTSA means:

> (*i*) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means.

> (*ii*) Disclosure or use of a trade secret of another without express or implied consent by a person who did 1 or more of the following:

> (A) Used improper means to acquire knowledge of the trade secret.

> (B) At the time of disclosure or use, knew or had reason to know that his or her knowledge of the trade secret was derived from or through a person who had utilized improper means to acquire it, acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use, or derived from or through a person who owed a duty to the person to maintain its secrecy or limit its use.

> (C) Before a material change of his or her position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake. [MCL 445.1902(b).]

In the trial court, Quick Draw alleged that Hagell had misappropriated its trade secrets by using or disclosing them to Glider at a time when Hagell knew that he had to maintain the trade secrets' secrecy, thus violating MCL 445.1902(b)(*ii*)(B).

When defendants moved for summary disposition, they argued that Quick Draw could not demonstrate that Hagell had used or disclosed any of Quick Draw's trade secrets. In support of this argument, defendants cited LaPointe's deposition testimony in which he conceded that Quick

---

[3] We further note that the thrust of Quick Draw's argument on this point is that Hagell is violating his agreements with Quick Draw to steal away Quick Draw's customers. Our Supreme Court has clearly explained that, in such situations, money damages are the only suitable relief because injunctive relief "would unnecessarily infringe on the customer's exercise of choice in the person with whom the customer deals." *Hayes-Albion v Kuberski*, 421 Mich 170, 184; 364 NW2d 609 (1984).

Draw did not have any evidence that Hagell had shared any confidential information, and that Quick Draw merely believed that Hagell "might use information that he's retained in his head from his time with Quick Draw." Defendants also cited to Quick Draw's response to defendants' first set of interrogatories in which Quick Draw stated, "Currently Quick Draw currently [sic] does not have sufficient information to provide the circumstances surrounding such use and/or disclosure of Quick Draw's confidential information, including trade secrets." Defendants noted that Quick Draw asserted that it would supplement this response when it acquired additional information, but it never did so.

In response to defendants' motion for summary disposition, Quick Draw failed to point to any evidence establishing that Hagell had used or disclosed any trade secrets. Quick Draw instead pointed to Hagell's testimony that he had contacted "30-40 Quick Draw customers, which he claims to have conveniently remembered 'off the top of his head,' " and concluded that this "show[ed] that Mr. Hagell has misappropriated Quick Draw's confidential information/trade secrets and is using same to unfairly compete with Quick Draw."

This response was insufficient to create a question of fact. As defendants correctly pointed out in the trial court and continue to point out on appeal, the identities of customers (which is distinct from a customer list) is not a trade secret. See *Hayes-Albion v Kuberski*, 421 Mich 170, 183; 364 NW2d 609 (1984) ("In general, there is nothing improper in an employee establishing his own business and communicating with customers for whom he had formerly done work in his previous employment."). Similarly, information "about the peculiar needs of a particular client" is not a trade secret. *Id*. Accordingly, defendants sufficiently demonstrated that Quick Draw could not establish that Hagell had misappropriated any trade secrets, and Quick Draw failed to respond with evidence establishing a question of fact on that issue.

On appeal, Quick Draw reiterates the arguments it made in the trial court. It continues to insist that Hagell misappropriated Quick Draw's trade secrets because, once Hagell started working for Glider, he contacted "30-40 Quick Draw customers, which he claims to have conveniently remembered 'off the top of his head.' " Quick Draw more explicitly states later in its brief on appeal that the trade secrets that "Hagell utilized . . . for the benefit of Glider" were Quick Draw's "customer identities and contacts." As explained, however, customer identities are not trade secrets. See *id*. Moreover, Hagell testified that he found all the customers' contact information online. Quick Draw argues that Hagell actually got the customers' contact information from his email because he said as much once during his deposition. Quick Draw ignores, however, that Hagell instantly corrected himself and repeated what he said throughout the rest of his deposition—that he got the customers' contact information online.

Troublingly, throughout its brief on appeal, Quick Draw repeatedly asserts, without any citation to the record, that Hagell misappropriated "customer lists" from Quick Draw and used those lists to gain sales for Glider. Yet Hagell unequivocally testified that he did not "take any customer lists with [him]," and that he simply contacted the customers that he remembered. Despite Quick Draw's repeated assertions to the contrary, nothing in the record suggests that Hagell ever used "customer lists" he acquired from Quick Draw to gain sales for Glider.

As such, this case resembles *Hayes-Albion*. There, the plaintiff sought to prevent the defendant from contacting the plaintiff's customers by arguing that the identities of its customers

and their contact information were trade secrets. *Hayes-Albion*, 421 Mich at 183. The defendant did not steal a list of customers that the plaintiff had kept secret, but instead had kept the names and addresses of plaintiff's customers in a personal memo book. *Id*. In rejecting the plaintiff's argument that its customers' identities and contact information were trade secrets, our Supreme Court held that "there is nothing improper in an employee establishing his own business and communicating with customers for whom he had formerly done work in his previous employment." *Id*. at 183. While, unlike in *Hayes-Albion*, Hagell went off his memory of Quick Draw's customers and not a personal memo book, that distinction does not require a different result. See, e.g., *Raymond James & Assoc, Inc v Leonard & Co*, 411 F Supp 2d 689, 694-695 (ED Mich, 2006).

On appeal, Quick Draw advances a new argument—that even if Hagell did not actually misappropriate any trade secrets, Quick Draw was nevertheless entitled to relief under a theory of "threatened misappropriation," as permitted by MCL 445.1903(1). Quick Draw's complaint, however, never alleged a theory of threatened misappropriation. It alleged only that "Hagell [and] Glider Systems have misappropriated and are misappropriating trade secrets of Quick Draw in violation of" the MUTSA. Likewise, Quick Draw never raised a theory of threatened misappropriation in response to defendants' motion for summary disposition, or at any other point in the lower court. Accordingly, Quick Draw waived any threatened-misappropriation argument by failing to raise such an argument in the trial court. See *Walters*, 481 Mich at 387.[4]

## D. UNJUST ENRICHMENT

Quick Draw next argues that the trial court erred by granting summary disposition in favor of defendants on Quick Draw's claim for unjust enrichment. We disagree.

"A claim of unjust enrichment requires the complaining party to establish (1) the receipt of a benefit by the other party from the complaining party and (2) an inequity resulting to the complaining party because of the retention of the benefit by the other party." *Karaus v Bank of New York Mellon*, 300 Mich App 9, 22-23; 831 NW2d 897 (2012). If this is established, "the law will imply a contract to prevent the unjust enrichment." *Id*. at 23. "However, a contract will be implied only if there is no express contract covering the same subject matter." *Belle Isle Grill Corp v City of Detroit*, 256 Mich App 463, 478; 666 NW2d 271 (2003).

Quick Draw alleged in the trial court, and continues to allege on appeal, that "Glider undeniably received a benefit"—and specifies that "[t]he benefit [was] confidential information, which was property of Quick Draw"—that Hagell used to "solicit, and sell, Glider systems to Quick Draw customers." Problematically, Glider is not a defendant to this action, so Quick Draw's

---

[4] In one paragraph in its brief on appeal, Quick Draw discusses its pricing information, but it never alleges in the argument section of its brief that Hagell disclosed or used this information such that he misappropriated it in violation of MCL 445.1902(b).

-10-

argument that Glider received any benefit is irrelevant, and the trial court did not otherwise err by dismissing a claim against a non-party to the case.[5]

As to Quick Draw's unjust enrichment claim against Hagell, Hagell signed a confidentiality agreement with Quick Draw that indisputably covered the same subject matter as Quick Draw's unjust enrichment claim. In such situations, the law will not imply a contract, so Quick Draw's claim against Hagell fails. See *Belle Isle Grill Corp*, 256 Mich App at 478.

On appeal, Quick Draw protests that defendants dispute the validity of Hagell's contracts with Quick Draw, and argues that this "gives rise to [Quick Draw's] restitution claims[.]" As defendants note, however, this is factually incorrect. Defendants never disputed the validity of the confidentiality agreement. While this fully refutes Quick Draw's argument, defendants also point out that to the extent they disputed the noncompete agreement, they did not challenge the validity of the entire agreement, only the enforceability of the noncompete provision.

Finally, Quick Draw argues that it has a valid unjust enrichment claim against Glider Michigan. Glider Michigan is not a party to Quick Draw's confidentiality agreement with Hagell, so its claim is not barred by the existence of that contract. See *Morris Pumps v Centerline Piping, Inc*, 273 Mich App 187, 194-195; 729 NW2d 898 (2006) (explaining that an express agreement will only bar a claim for unjust enrichment if the express agreement was "between the same parties"). Quick Draw's claim still fails, however, because it provided no evidence that Glider Michigan received any benefit from Hagell's alleged improper conduct. Quick Draw contends that "Glider Michigan unjustly benefits from Mr. Hagell's misappropriation of Quick Draw's trade secrets because Glider Michigan provided and was paid for installation and/or servicing of at least some of the rolling tarpaulin systems sold by Mr. Hagell on behalf of Glider." In support of this assertion, Quick Draw cites to LaPointe's affidavit in which he averred:

> I have reviewed Mr. Hagell's deposition in which he states that about 80% of the sales he made since he began working for Glider have been to US customers, including sales of new systems and repair. Based on my 30 years of experience in the business of rolling tarpaulin systems, I find that it would be most unlikely that a US customer seeking a repair to an existing system would transport the system to Ontario Canada to have one of the Canadian Glider affiliates perform the repair work as this would [incur] significant expense and delay, but would instead have the repair work done by Glider Michigan.

---

[5] Quick Draw points out on appeal that it attempted to add Glider as a party and that the trial court denied Quick Draw's request, but it is unclear Quick Draw's purpose in citing this fact. Despite listing in its statement of questions presented that it was error for the trial court to deny Quick Draw's request for leave to amend its complaint, Quick Draw never actually argues that it was error for the trial court do so. Correspondingly, Quick Draw never addresses the reasons the trial court gave for denying Quick Draw's request. Quick Draw's failure to address the basis for the trial court's denial of Quick Draw's request for leave to amend its complaint renders the issue abandoned on appeal. See *Redmond*, 332 Mich App at 449.

-11-

This testimony is plainly speculation, which cannot create a question of fact. See *Estate of Trueblood*, 327 Mich App at 288. Quick Draw also cites to its response to defendants' motion for summary disposition in support of its assertion that Glider Michigan serviced "at least some" of the Glider kits sold by Hagell, but Quick's Draw's response to defendants' dispositive motion is clearly not evidence that can create a question of fact. See *Hazle v Ford Motor Co*, 464 Mich 456, 474; 628 NW2d 515 (2001) (explaining that statements made by the plaintiff's attorney were "clearly . . . an inappropriate means of opposing a motion for summary disposition brought under MCR 2.116(C)(10)").

## III. SANCTIONS

Next, Quick Draw challenges the trial court's order awarding sanctions to defendants.

## A. STANDARD OF REVIEW

"A trial court's findings with regard to whether a claim or defense was frivolous, and whether sanctions may be imposed, will not be disturbed unless it is clearly erroneous." *1300 LaFayette E Coop, Inc v Savoy*, 284 Mich App 522, 533; 773 NW2d 57 (2009). "A decision is clearly erroneous where, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made." *Id*. at 534 (quotation marks and citation omitted).

## B. ANALYSIS

MCL 600.2591(1) requires a trial court that hears a civil action to award attorney fees to the prevailing party if the court finds that the action was frivolous. MCL 600.2591(3)(a) provides the definition of "frivolous" as used in this section:

> (a) "Frivolous" means that at least 1 of the following conditions is met:
>
> (*i*) The party's primary purpose in initiating the action or asserting the defense was to harass, embarrass, or injure the prevailing party.
>
> (*ii*) The party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true.
>
> (*iii*) The party's legal position was devoid of arguable legal merit.

There is no dispute that defendants were the prevailing party. See MCL 600.2591(3)(b) (defining "prevailing party" as "a party who wins on the entire record"). In the trial court, defendants argued that Quick Draw's complaint was frivolous under all three of the definitions provided in MCL 600.2591(3)(a). When it granted defendants' request for sanctions, the trial court repeatedly emphasized that Quick Draw needed evidence beyond conjecture and speculation before filing its complaint, and that "reasonably inferring is not enough." While the trial court did not specify the grounds on which it was granting defendants' request for sanctions, based on its stated reasons for imposing sanctions, the trial court appears to have ruled that sanctions were appropriate under MCL 600.2591(3)(a)(*ii*)—that "[t]he party had no reasonable basis to believe

that the facts underlying that party's legal position were in fact true." "This finding, in turn, implicates" subsection (3)(a)(*iii*)—that "[t]he party's legal position was devoid of arguable legal merit." *Meisner Law Group PC v Weston Downs Condo Ass'n*, 321 Mich App 702, 732; 909 NW2d 890 (2017). "A claim is devoid of arguable legal merit if it is not sufficiently grounded in law or fact." *Ford Motor Co v Dep't of Treasury*, 313 Mich App 572, 589; 884 NW2d 587 (2015) (quotation marks, citation, and brackets omitted).

"To determine whether sanctions are appropriate under MCL 600.2591, it is necessary to evaluate the claims or defenses at issue at the time they were made." *In re Costs & Attorney Fees*, 250 Mich App 89, 94; 645 NW2d 697 (2002).

There is sufficient evidence to support the trial court's conclusions that Quick Draw had no reasonable basis to believe the facts underlying its legal positions were true at the time it filed its petition. We are therefore not left with a definite and firm belief that the trial court erred by imposing sanctions.

Throughout its complaint, Quick Draw alleged that it had been damaged. For its breach of contract claim, Quick Draw alleged, "As a direct and proximate result of Defendant Hagell's violation of his obligations, Quick Draw has been and will continue to be irreparably injured." For its trade secret claim, Quick Draw alleged, "As a direct and proximate result of the Defendants' said misappropriation of trade secrets, Quick Draw have been and will continue to be damaged monetarily[.]" For its unjust enrichment claim, Quick Draw alleged, "The actions, conduct and representations of Defendants' described above have unjustly enriched Defendants and damaged the businesses of Quick Draw in an amount exceeding $25,000.00, exclusive of interests, costs and attorneys' fees." However, a review of the evidence shows that Quick Draw had no reasonable basis to believe that it had been damaged by Hagell's work at Glider, and its assertions to the contrary were speculative at best.

In response to defendants' first set of interrogatories, when asked to state and itemize its damages, Quick Draw stated that it "does not have sufficient information to provide a detailed and itemized accounting of damages claimed by Quick Draw in this lawsuit," but said that the "nature of the damage . . . pertains to lost sales[.]" Then, at LaPointe's deposition, when asked what damages Quick Draw had suffered as a result of Hagell's "alleged activities," LaPointe said "[l]oss of sales," but he could not identify any sale that Quick Draw had lost as a result of Hagell's activities. He could not even identify any Glider customers that were previously Quick Draw customers. The only attempt at providing "evidence" of damages that Quick Draw produced was LaPointe's eleventh-hour affidavit, signed the same day that Quick Draw responded to defendants' motion for summary disposition, in which LaPointe averred that he actually *could* identify sales and customers that Quick Draw lost to Glider, and those sales were to the same customers that Hagell identified in his response to Quick Draw's first set of interrogatories. Not only did LaPointe's affidavit contradict his deposition testimony as explained above,[6] but it further shows

---

[6] It bears noting that Hagell provided the list of potential Quick Draw customers that he had contacted with Glider well over a month before LaPointe's deposition, and it would not be unreasonable to expect LaPointe, as Quick Draw's designated representative, to have reviewed that list by the time of his deposition.

that Quick Draw had not identified any evidence to support its claim that it had been damaged in its complaint. See *In re Costs & Attorney Fees*, 250 Mich App at 94 (explaining that claims are evaluated at the time they were made). Moreover, as the trial court pointed out, even without reviewing Hagell's deposition testimony, Quick Draw could have spoken to its customers to determine whether Quick Draw had lost any sales to Glider because of Hagell before filing its suit. While LaPointe averred in an affidavit that Quick Draw did not contact customers to make this determination because LaPointe "consider[s] it to be very bad business to get customers involved in litigation of which they are not a party," this only further confirms that Quick Draw "did not sufficiently investigate and research the factual bases of its claims." *Meisner Law Group PC*, 321 Mich App at 734. Rather than confirming its suspicions, Quick Draw pursued this lawsuit based on its speculative belief that it must have been somehow damaged by Hagell's employment at Glider. A trial court does not clearly err when it finds a lawsuit based on the plaintiff's speculative beliefs to be frivolous. See *id*. at 733 (holding that the trial court did not clearly err by finding that the plaintiff's claim based on its "speculative belief that [the] defendant had benefitted unjustly from [the] plaintiff's legal advice" was frivolous).

Additionally, in its complaint, Quick Draw alleged that Hagell had misappropriated Quick Draw's trade secrets. For instance, Quick Draw alleged that "Defendants Hagell [and] Glider Systems have misappropriated and are misappropriating trade secrets of Quick Draw in violation of" the MUTSA. Yet, like with its claim that it had been damaged by Hagell's activities as an employee of Glider, Quick Draw had no reasonable basis to believe that Hagell had misappropriated any of Quick Draw's trade secrets.

Before filing suit, Quick Draw sent a letter to Glider Michigan and Hagell warning them that Hagell was not to misappropriate any of Quick Draw's trade secrets. Glider's attorney responded, stating that Hagell had not disclosed any trade secrets, and asked Quick Draw to specify which trade secrets it believed Hagell had misappropriated. Quick Draw did not respond, but filed this action instead. In response to this action, Glider's attorney again sent a letter to Quick Draw requesting that Quick Draw identify the trade secrets that Hagell allegedly retained or disclosed. Again, Quick Draw did not respond to the request. Then, in response to defendants' first set of interrogatories, when asked to identify which trade secrets Hagell disclosed, Quick Draw stated that it "currently does not have sufficient information to provide the circumstances surrounding such use and/or disclosure of Quick Draw's confidential information, including trade secrets." This trend continued at LaPointe's deposition. While LaPointe testified that he believed Hagell misappropriated Quick Draw's confidential information related to customer contact and personal information, he admitted that he had no evidence that Hagell actually used or disclosed any of Quick Draw's confidential information while at Glider.[7] Thus, Quick Draw's allegation that

---

[7] It is worth repeating that customer contact information and personal information are generally not trade secrets, as explained above.

-14-

Hagell misappropriated Quick Draw's trade secrets was based only on Quick Draw's speculative beliefs that he did, which can warrant sanctions. See *id*. at 733.[8]

Finally, as the trial court observed, Quick Draw named Glider Michigan as a defendant in this suit, which was clearly "not correct" because Glider Michigan never employed or had any relationship with Hagell. While Quick Draw maintains that "it was unclear which Glider entity Hagell was working for" when it filed its complaint, Glider's counsel informed Quick Draw that Glider Michigan was the wrong defendant less than a week after Quick Draw filed its complaint. Quick Draw faults Glider for not providing "proof" that Hagell did not work for Glider Michigan until "May 2021," yet this did not stop Quick Draw from attempting to add Glider as a defendant in its motions for leave to amend its complaint in February and April 2021. It also ignores the fact that Glider did not sit idly by and allow Quick Draw to pursue an action against the wrong defendant, but repeatedly notified Quick Draw of its mistake and gave Quick Draw the opportunity to fix it. Quick Draw insists that Glider's notices that Quick Draw sued the wrong party were somehow insincere because Glider Michigan never sought dismissal from the case. Whatever point Quick Draw is trying to make with this argument is undercut by the simple fact that Glider Michigan successfully motioned to have the case against it dismissed (the order now on appeal). Lastly, Quick Draw argues that its decision to leave Glider Michigan as a defendant was justified because Quick Draw believed that Glider Michigan "unjustly benefit[ted] from Mr. Hagell's misappropriation of Quick Draw's trade secrets," but Quick Draw never alleged this in its complaint. The first time Quick Draw ever brought forth a theory for how Glider Michigan was unjustly enriched was in its response to defendants' motion for summary disposition. That was also the first time that Quick Draw produced any evidence to support the theory, and that evidence consisted of a single paragraph in LaPointe's affidavit that accompanied its response to defendants' motion for summary disposition. This evidence was wholly deficient, however, for the reasons explained above. For all these reasons, Quick Draw's suit against Glider Michigan was clearly devoid of legal merit, and the trial court did not clearly err by imposing sanctions on Quick Draw.[9]

## IV. EVIDENTIARY HEARING

Lastly, Quick Draw argues that it was entitled to an evidentiary hearing to determine the reasonableness of defendants' requested attorney fees. We disagree.

---

[8] In its brief on appeal, Quick Draw argues that it did not need evidence of actual misappropriation of trade secrets, and that "threatened" misappropriation is sufficient under MCL 445.1903. While true in the abstract, this argument ignores that Quick Draw only ever alleged actual misappropriation, including in its complaint. Even when it sought to amend its complaint, Quick Draw only alleged actual misappropriation. Quick Draw is essentially asking this Court to conclude that its legal position was not frivolous because it could have taken a different legal position, which we refuse to do.

[9] Defendants also requested sanctions in the trial court under MCL 445.1905, but it unclear whether the trial court rendered its decision on that basis. At any rate, it is unnecessary to address whether sanctions were proper under MCL 445.1905 because the trial court did not clearly err when it found that Quick Draw's action was frivolous.

-15-

A.  STANDARD OF REVIEW

"A trial court's decision that an evidentiary hearing is not warranted is reviewed for an abuse of discretion." *Kernen v Homestead Dev Co*, 252 Mich App 689, 691; 653 NW2d 634 (2002).

B.  ANALYSIS

Quick Draw argues that it is entitled to an evidentiary hearing on the amount of defendants' attorney fees on the basis of *Smith v Khouri*, 481 Mich 519, 532; 751 NW2d 472 (2008), wherein our Supreme Court explained, "If a factual dispute exists over the reasonableness of the hours billed or hourly rate claimed by the fee applicant, the party opposing the fee request is entitled to an evidentiary hearing to challenge the applicant's evidence and to present any countervailing evidence." Quick Draw maintains that a factual dispute exists in this case because, in its brief filed in opposition to defendants' request for fees and costs, Quick Draw claimed that the amount of fees requested by defendants was "not reasonable at all for the issues raised in this litigation considering all the actions involved." Quick Draw provided no further detail. Clearly, Quick Draw did not dispute "the reasonableness of the hours billed or hourly rate claimed" by defendants. *Id*. Instead, it merely asserted that the total amount requested was unreasonable without any explanation for why. As such, Quick Draw was not entitled to an evidentiary hearing under *Smith*, and the trial court did not abuse its discretion by not holding such a hearing.

Regardless, defendants provided the trial court with a reasonable evidentiary basis to evaluate and decide defendants' motion. "[I]f the parties created a sufficient record to review the issue, an evidentiary hearing is not required." *Kernen*, 252 Mich App at 691. See also *Sabbagh v Hamilton Psychological Services, PLC*, 329 Mich App 324, 359; 941 NW2d 685 (2019).

Affirmed.

/s/ Mark J. Cavanagh
/s/ Colleen A. O'Brien
/s/ Michelle M. Rick