*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KAKALIA MANAGEMENT, LLC,

      Plaintiff-Appellant,

v

OTSEGO COUNTY TREASURER and COUNTY
OF OTSEGO,

      Defendants-Appellees.

UNPUBLISHED
April 13, 2023

No. 361621
Otsego Circuit Court
LC No. 18-17383-CH

Before: GADOLA, P.J., and PATEL and MALDONADO, JJ.

PER CURIAM.

The issue on appeal is whether plaintiff Kakalia Management, LLC has a compensable takings claim under Article 10, § 2 of the 1963 Michigan Constitution and/or a claim for unjust enrichment following a tax-foreclosure sale of its property. Kakalia claims that because defendant county of Otsego purchased the property under the then-existing version of MCL 211.78m(1)[1] and the property was not sold at a public auction, Kakalia is entitled to be compensated for the fair market value of its property, less the tax liability owed (i.e., its pre-foreclosure equity in the property). Our Supreme Court held in *Rafaeli, LLC v Oakland Co,* 505 Mich 429, 477; 952 NW2d 434 (2020) that "a former property owner has a compensable takings claim *if and only if* the tax-foreclosure sale produces a surplus[,]" in which case "the former owner may make a claim for the surplus proceeds." (emphasis added). It is undisputed that there were no surplus proceeds in this case because the county purchased the property from defendant Otsego County Treasurer for the minimum bid amount, which Kakalia acknowledges equaled its tax-liability. The *Rafaeli* Court "reject[ed] the premise that just compensation requires that [former property owners] be awarded the fair market value of their properties so as to be put in as good of position had their properties not been taken at all." *Id.* at 483. Accordingly, we affirm the trial court's order granting defendants' motion summary disposition under MCR 2.116(C)(10).

---

[1] MCL 2.11.78m was amended by 2020 PA 255, effective January 1, 2021, which was after the August 2018 tax-foreclosure sale.

## I. FACTUAL BACKGROUND

The underlying facts are not in dispute. In January 2012, Kakalia acquired a commercial property in Gaylord, Michigan known as the Royal Crest Motel or the Econolodge. Kakalia sold the property by land contract in June 2015, but the land contract vendee defaulted and forfeited its interest back to Kakalia in June 2017. On February 5, 2018, a judgment of foreclosure was entered on the property pursuant to the General Property Tax Act (GPTA), MCL 211.1 *et seq.*, because Kakalia owed delinquent taxes, unpaid assessments, fees, penalties, and/or interest totaling $89,609.47. Kakalia failed to redeem its property, and the judgment of foreclosure became effective on April 2, 2018, which resulted in absolute title to the property vesting to the Otsego County Treasurer. See MCL 211.78g(2).

The tax-foreclosed property was scheduled to be auctioned on August 13, 2018. On July 18, 2018, under the then-existing version of MCL 211.78m(1), the county exercised its statutory election right to purchase the property from the Otsego County Treasurer for a minimum bid amount of $89,609.47.[2] At the time of the foreclosure purchase, the tax-delinquent property was worth approximately $455,000 based on the facts alleged here.

In August 2018, Kakalia filed a complaint to quiet title against the Otsego County Treasurer, alleging that it did not receive actual or proper notice of the tax-foreclosure proceedings. The trial court dismissed Kakalia's claim under MCR 2.116(C)(4), but Kakalia was afforded leave to amend its claim. Kakalia amended its claim to allege that the Takings Clause of the Michigan Constitution required the county to pay Kakalia just compensation equal to the fair market value of the property less the amount owed to the Otsego County Treasurer for delinquent taxes.

Defendants moved to dismiss Kakalia's claim under MCR 2.116(C)(10), arguing that the sale of the property to the county did not yield any "surplus proceeds" and thus Kakalia had no right to recovery pursuant to *Rafaeli*. In response, Kakalia asserted that *Rafaeli* was inapplicable because (1) there was no "foreclosure sale" in the instant matter and (2) the taking in *Rafaeli* was the "common law property right to retain any surplus proceeds from a foreclosure sale," while the taking in the instant was the "real property itself." Relying on Justice Viviano's concurring opinion in *Rafaeli*, Kakalia asserted that the *Rafaeli* majority did not address whether a former property owner has a vested property right to equity held in the property.

After initially denying the Otsego County Treasurer's motion for summary disposition, the trial court granted the motion after reconsideration:

> The Michigan Supreme Court has held that one who loses a "property interest" through tax foreclosure has a common law right to any "surplus proceeds" actually realized by the government through the sale of the property and that such right is protected [by] the Takings Clause of the Michigan Constitution. *Rafaeli, LLC v Oakland County*, 505 Mich 429, 470-3 (2020).

---

[2] "Because of the property's proximity to the downtown County Building," the county maintained that it wished to retain the property "for potential County growth."

The plaintiff in this case challenges the sale of its former real estate after property tax foreclosure via direct sale by the Otsego County Treasurer to Otsego County for $89,609.47, which is the owing for unpaid real estate taxes. Although not binding precedent, the court is persuaded by the analysis of the United States District Court for the Eastern District of Michigan in *Hall v Oakland County Treasurer*, Case No. 20-12230 (ED Mich, May 21, 2021).[3] Consistent with the Hall courts [sic] reasoning, this court finds that defendant in this case is entitled to summary disposition pursuant to MCR 2.116 (C)(7) [sic].[4]

Thereafter, the court granted Kakalia leave to file a third amended complaint adding the county as a party defendant, adding a claim for unjust enrichment, and seeking a declaratory judgment to confirm its present legal interest in the surplus equity in the subject property. Contemporaneous with the order granting leave, the court granted summary disposition in favor of defendants under MCR 2.116(C)(10) as to all of Kakalia's claims asserted in the third amended complaint. This appeal followed.

## II. STANDARD OF REVIEW

"We review de novo a trial court's decision on a motion for summary disposition." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). A motion for summary disposition pursuant to MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Woodring v Phoenix Ins Co,* 325 Mich App 108, 113; 923 NW2d 607 (2018). We consider all evidence submitted by the parties in the light most favorable to the non-moving party. *El-Khalil*, 504 Mich at 160. Summary disposition under MCR 2.116(C)(10) is only appropriate when there is no genuine issue of material fact. *Id.* "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Zaher v Miotke*, 300 Mich App 132, 139-140; 832 NW2d 266 (2013).

## III. TAKINGS CLAIM

Kakalia argues that its surplus equity interest in the tax-foreclosed property was improperly taken and that just compensation requires that it be compensated for the fair market value of its property, less the tax liability owed. We disagree.

---

[3] After this appeal was filed, the Sixth Circuit Court of Appeals reversed the district court's dismissal of the *Hall* plaintiffs' takings claim under the U.S. Constitution, vacated the district court's dismissal of their takings claims under the Michigan Constitution, and remanded with instructions for the district court to abstain from adjudicating the takings claims under the Michigan Constitution. *Hall v Meisner*, 511 F4th 185, 196-197 (CA 6, 2022).

[4] The trial court subsequently amended its order to reflect that its holding was based on MCR 2.116(C)(10).

Under the GPTA, any property taxes that remain unpaid from the preceding twelve months are "returned as delinquent for collection" on March 1 of each year. MCL 211.78a(2). If the delinquent property taxes remain unpaid by March 1 of the following year, the property is "forfeited to the county treasurer for the total amount of those unpaid delinquent taxes, interest, penalties, and fees." MCL 211.78g(1).[5] Forfeited property may be redeemed by paying the total amount of unpaid delinquent taxes, interest, penalties, and fees to the county treasurer on or before the March 31 immediately succeeding the entry of a foreclosure judgment. MCL 211.78g(3).

When property taxes are delinquent, a county treasurer may elect to act as the foreclosing governmental unit (FGU) for the municipality where the property is located; otherwise the state will do so. MCL 211.78(3), (8). If the property owner does not redeem the forfeited property, the FGU may file a petition for foreclosure. MCL 211.78h(1). If the property owner does not pay the delinquent taxes, interest, penalties and fees by the March 31 immediately succeeding the entry of the foreclosure judgment, fee simple title to the property will vest absolutely to the FGU without any further redemption rights. MCL 211.78k(5).

Under the then-existing version of MCL 211.78m for the time periods relevant to this action, the state had a "right of first refusal" to buy the foreclosed property "at the greater of the minimum bid or its fair market value." MCL 211.78m(1).[6] If the state declined, the city, village or township in which the property was located could purchase the property by paying the FGU the "minimum bid." *Id.* And if the city, village or township declined, the county in which the property was located could purchase the property by paying the FGU the "minimum bid." *Id.* Otherwise, the foreclosed property would be sold by the FGU at public auction. MCL 211.78m(2). If a governmental body exercised its statutory right to purchase the property from the FGU before the public auction, the purchasing governmental body was free to sell the property. MCL 211.78m(1). But, under the then-existing version of the GPTA, the property's former owner did not have a right to any of the surplus proceeds from the sale. See *Rafaeli*, 505 Mich at 447 (noting that the GPTA "does not provide for any disbursement of the surplus proceeds to the former property owner, nor does it provide former owners a right to make a claim for these surplus proceeds.")[7]

Michigan's Takings Clause provides, in relevant part:

---

[5] MCL 211.78g was amended by 2020 PA 33 and 2020 PA 256, but the language we have cited remained unchanged.

[6] As used in this section, "minimum bid" is the amount of tax delinquency, including interest, penalties, and fees due on the property. MCL 211.78m(11).

[7] In response to *Rafaeli*, the Legislature passed amendments to the GPTA to provide a mechanism for persons to obtain surplus proceeds after a tax-foreclosure sale. *Proctor v Saginaw Bd of Comm'rs*, 340 Mich App 1, 9; 985 NW2d 193 (2022). Specifically, MCL 211.78t, which was added by 2020 PA 256, outlines how a former property owner or other claimant may claim an interest in the remaining proceeds following a sale of foreclosed property. The Legislature also amended the GPTA to require any governmental body that purchases tax-foreclosed property to pay the FGU "the greater of the minimum bid or the fair market value of the property." See MCL 211.78m(1), as amended by 2020 PA 255.

Private property shall not be taken for public use without just compensation therefore being first made or secured in a manner prescribed by law. If private property consisting of an individual's principal residence is taken for public use, the amount of compensation made and determined for that taking shall be not less than 125% of that property's fair market value, in addition to any other reimbursement allowed by law. . . .

"Public use" does not include the taking of private property for transfer to a private entity for the purpose of economic development or enhancement of tax revenues. Private property otherwise may be taken for reasons of public use as that term is understood on the effective date of the amendment to this constitution that added this paragraph. [Const 1963, art 10, § 2.]

"A 'taking' . . . means that the government has permanently deprived the property owner of any possession or use of the property without the commencement of formalized condemnation proceedings." *Rafaeli*, 505 Mich at 454. "When such a taking occurs, the property owner is entitled to just compensation for the value of the property taken." *Id*. at 454-455. The *Rafaeli* Court concluded that Michigan's "common law recognizes a former property owner's property right to collect the surplus proceeds that are realized from the tax-foreclosure sale of property." *Id*. at 470. The Court also found that Article 10, § 2 of Michigan's "1963 Constitution protects a former owner's property right to collect the surplus proceeds following a tax-foreclosure sale[.]" *Id*. at 473. And because this common-law interest is protected by the Takings Clause, the GPTA could not abrogate it. *Id*. But the Court held that "a former property owner has a compensable takings claim *if and only if* the tax-foreclosure sale produces a surplus." *Id*. at 477 (emphasis added).

The remedy for a government taking is "just compensation for the value of the property taken." *Id*. at 482 (cleaned up). The *Rafaeli* Court determined that "just compensation" was the surplus proceeds generated from the tax-foreclosure sale. *Id*. at 481-482. In doing so, the Court made it clear that "the property improperly taken was the surplus proceeds, not plaintiffs' real properties." *Id*. at 483. The Court expressly "reject[ed] the premise that just compensation requires that plaintiffs be awarded the fair market value of their properties so as to be put in as good of position had their properties not been taken at all" because "this would run contrary to the general principle that just compensation is measured by the value of the property *taken*[,]" "plaintiffs are largely responsible for the loss of their properties' value by failing to pay their taxes on time and in full[,]" and "[i]f plaintiffs were entitled to collect more than the amount of the surplus proceeds, not only would they be taking money away from the public as a whole, but they would themselves benefit from their tax delinquency." *Id*. at 483. The Court concluded that "when property is taken to satisfy an unpaid tax debt, just compensation requires the foreclosing governmental unit to return any proceeds from the tax-foreclosure sale in excess of the delinquent taxes, interest, penalties, and fees reasonably related to the foreclosure and sale of the property—*no more, no less*." *Id*. at 483-484 (emphasis added).

In this case, Kakalia's property was not sold at a public auction; instead the county exercised its statutory election to purchase the property from the Otsego County Treasurer, the FGU, for the minimum bid pursuant to the then-existing version of MCL 211.78m(1). It is undisputed that no "surplus proceeds" were generated by the tax-foreclosure sale to the county.

But Kakalia attempts to distinguish this case from *Rafaeli* by arguing that "the property improperly taken *was* Kakalia's real property, not the surplus proceeds from a public auction." Kakalia has failed to demonstrate that its real property was improperly taken. Pursuant to MCL 211.78k(5), absolute title to the subject property vested to the Otsego County Treasurer when the foreclosure judgment became effective. Because Kakalia did not challenge the foreclosure proceedings, there is no dispute that the Otsego County Treasurer properly acquired title to the property. Once absolute title vested to the Otsego County Treasurer with no further rights of redemption, Kakalia no longer had a vested property right to the real property itself. Albeit arguably in dictum, the *Rafaeli* Court stated that it is "unaware of any authority affirming a vested property right to equity held in property generally." *Id*. at 484 n 134.[8] And Justice Viviano recognized in his concurrence that "the majority's view of the case would seemingly be that if the property does not sell at auction and is simply transferred to a governmental unit, the taxpayer is out of luck: no proceeds, let alone a surplus, have been produced or retained by the government." *Rafaeli*, 505 Mich at 518 (VIVIANO, J., concurring). We adopt the dicta set forth in *Rafaeli* and affirm the trial court's dismissal of Kakalia's takings claim.

## IV. UNJUST ENRICHMENT

Next, Kakalia argues that the trial court erred in dismissing its unjust enrichment claim. We disagree.

"Unjust enrichment is a cause of action to correct a defendant's unjust retention of a benefit owed to another." *Genesee Co Drain Comm'r v Genesee Co*, 504 Mich 410, 417; 934 NW2d 805 (2019) (cleaned up). To establish a claim of unjust enrichment, a plaintiff must show "(1) the receipt of a benefit by the other party from the complaining party and (2) an inequity resulting to the complaining party because of the retention of the benefit by the other party." *Karaus v Bank of New York Mellon*, 300 Mich App 9, 22-23; 831 NW2d 897 (2012). "Not all enrichment is unjust in nature, and the key to determining whether enrichment is unjust is determining whether a party unjustly received and retained an independent benefit." *Id*. at 23. Our Courts recognize a viable claim for unjust enrichment for violation of a plaintiff's common-law property rights protected under our state's Takings Clause to collect the surplus proceeds that are realized from the tax-foreclosure sale of property. See *Rafaeli*, 505 Mich at 468-470, 473; *Proctor*, 340 Mich App at 17, 19-20.

Kakalia's unjust enrichment claim alleges that the county "has received a benefit from [Kakalia] by retaining the market value of the subject property in excess of the amount needed to

---

[8] The Court went on to state, "[n]or is it necessary for us to do so here." *Rafaeli*, 505 Mich at 484 n 134. The Court explained that the issue was "whether a former property owner retains the ability to collect any surplus proceeds that might result after the government seizes title to real property for failure to pay taxes and then sells that property for more than the tax delinquency." *Id*. "It is a well-settled rule that statements concerning a principle of law not essential to determination of the case are obiter dictum and lack the force of an adjudication," and are "not binding on this Court." *Griswold Props, LLC v Lexington Ins Co*, 276 Mich App 551, 557-558; 741 NW2d 549 (2007). But it is permissible for an appellate court to find dictum persuasive and decide to follow it. *Dykstra v Dep't of Transp*, 208 Mich App 390, 392; 528 NW2d 754 (1995).

pay" the delinquent taxes, interest, penalties, and fees, which "is an inequitable result . . . because the value of the property was far greater than the amount [Kakalia] owed . . . for unpaid taxes." Kakalia alleges that the county "has been unjustly enriched by retaining the surplus equity in [Kakalia's] property."

Kakalia has failed to demonstrate that the county has received a "benefit" from Kakalia. At set forth in Issue III, *supra*, it is undisputed that no "surplus proceeds" were realized from a "tax-foreclosure sale," and Kakalia has failed to demonstrate a property right or amount or benefit that was "unjustly" taken from it by the county, which properly acquired the subject property from the Otsego County Treasurer after proper tax-foreclosure proceedings. The *Rafaeli* Court made clear that a plaintiff's only "property interest" surviving a tax-foreclosure is not in the real property itself, but only in the surplus proceeds resulting from the tax-foreclosure sale, if any. In this case, there are no such surplus proceeds. Further, there was nothing improper or unlawful with the Otsego County Treasurer's foreclosure of the subject property, or the county's exercise of its statutory election to purchase the property from the Otsego County Treasurer for the minimum bid pursuant to the then-existing version of MCL 211.78m(1). No evidence suggests that the county has unjustly benefited by its legal purchase of the property for the minimum bid amount. "One is not unjustly enriched . . . by retaining benefits involuntarily acquired which law and equity give him absolutely without any obligation on his part to make restitution." *Tkachik v Mandeville*, 487 Mich 38, 48; 790 NW2d 260 (2010) (cleaned up). Accordingly, the trial court did not err in dismissing Kakalia's unjust enrichment claim.

## V. DECLARATORY JUDGMENT

Finally, Kakalia argues that it is entitled to a declaratory ruling that the county is obligated to pay Kakalia any surplus proceeds from a future sale of the subject property. We disagree.

Because the subject property was sold under MCL 211.78m "before July 18, 2020," MCL 211.78t(1)(b) now provides the exclusive mechanism for a former property owner to claim the surplus proceeds from a tax-foreclosure sale. See MCL 211.78t(11). But since the tax-foreclosure sale already occurred and it's undisputed that there were no "surplus proceeds," Kakalia has no further remedy. Accordingly, we affirm the trial court's dismissal of Kakalia's claim for a declaratory judgment.

Affirmed.

/s/ Michael F. Gadola
/s/ Sima G. Patel
/s/ Allie Greenleaf Maldonado